THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. ALICE E. BUTLER.

No. 7890.

1. PETITION, *Sufficient.* The petition *held* to be sufficient to charge negligence in the management of the engine and cars.

2. RAILROAD COMPANY — *"Cornering" Cars — Negligence.* Common prudence would dictate that cars should not be "cornered" in railroad yards, and, before a train is set upon a track, those in the management of it should use reasonable diligence to see that it will clear the car or cars on another track, and a failure to do so may be negligence as toward employees working on the colliding cars.

3. JURY — *Questions of Fact — Duty of Court.* A party has a right to request answers to particular questions of fact pertinent to the issues, and which can be answered fairly upon the evidence, and the court has no discretion to refuse to submit them to the jury; but it should refuse all questions propounded in a negative or

leading form, or unfair in substance, as those assuming as true matters that are false or disputed.

4. ———— *Instructions.* The instructions of the court *held* not erroneous in any material respect.

*Error from Ford District Court.*

On November 28, 1890, Alice E. Butler commenced the original action to recover damages for the death of her husband, Elmer E. Butler, a switchman in the defendant's yards at Dodge City, on August 5, 1890. It was charged in substance in the petition, that about 8 o'clock A. M. of said day the defendant, while operating one of its engines and exchanging some of its cars from one track to another, and shunting, kicking or switching said cars, by its agents and servants other than said Butler, managed said engine and cars carelessly and negligently, and then and there, without his fault, and by reason of such carelessness and negligence, struck with great violence the car on which he was then at work under charge and direction of the defendant, and thereby shook and threw him off said car and onto the railroad track, and ran over and killed him. The answer was a general denial.

The evidence shows that Butler was one of a switching crew, consisting of an engineer and fireman on the engine, a foreman named Bleaker, a switchman named Martin, and himself. The general course of the railroad where they were working was east and west, and there were two side-tracks or switches south of the main track, the first one branching from Bridge street east, being called the "river track," and the other branching from it east of Bridge street, being called the "house track," extending to the freight warehouse. The switch east of Bridge street could be so adjusted as to throw cars from the main track either onto the river track or the house track. On the

occasion of the casualty, the engine was attached to the west end of the way-car, which had five or six cars attached to the east of it on the river track, which were to be pulled out upon the main track, and the car furthest east thrown onto the house track to be coupled to some cars standing near the warehouse, after which the others were to be thrown back onto the river track.    The evidence (with the exception of that of one witness, who must have been mistaken) shows that Butler was on the car that was to be thrown onto the house track, and it was kicked eastward by the engine and other cars, Bleaker pulling the pin and Martin turning the switch, and, after the car passed him, turning it back again so as to throw the other cars upon the river track, Bleaker again pulling the pin which coupled the way-car to the rest of the train, which was kicked back upon the river track ; and these overtook the one on which Butler was riding on the house track before it had gone far enough to clear it from those following on the river track, and the car furthest east struck the northwest corner of the one upon which Butler was riding with a force which knocked him off, and he was run over and killed. The evidence is quite conflicting as to Butler's position on the car at the time of the collision, some of the witnesses claiming that he was on the top of the car and fell therefrom, while others say that he was clinging to the east end of the car, and that his hold gave way, causing him to fall by reason of the shock.  Some evidence was given tending to show that he had been at the brake at the east end, and that he had turned the brake-wheel and let it off again ; and it was claimed by the defendant below that this retarded the motion of the car, by reason of which it was overtaken by those coming on the river track.    There was a

clearing post a few inches high set up between the river track and the house track at a point far enough east to indicate where cars upon the two tracks would clear each other.

The cause was tried at May term, 1891, a verdict being returned for the plaintiff in the sum of $9,450, together with answers to numerous particular questions of fact. The defendant moved for judgment in its favor on the findings, and also for a new trial ; but these were overruled, and the defendant below brings the case here for review upon a case-made. The opinion was filed February 8, 1896.

*A. A. Hurd, C. N. Sterry*, and *Stambaugh & Hurd*, for plaintiff in error.

*Sullivan & Sullivan, Overmyer & Mulvane*, and *J. H. Copenheffer*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. In the parlance of railroad switch yards, when a car running or standing on one track is struck by a car or cars in motion on another before the two tracks have sufficiently diverged to admit of the cars clearing each other, they are said to " corner " ; and it was a collision of this nature, between cars running in the same direction upon different tracks, that caused the death of Elmer E. Butler. Such an occurrence can hardly take place without the fault of one person or more. It is claimed by the railroad company that the petition is insufficient to charge the foreman or switchman with negligence, and instructions were asked to that effect. The petition was not well drawn, yet we think that, by a liberal interpretation, it may be said to charge negligence and carelessness in the management of the cars, as

well as that of the engine, and as no motion was made with a view to its correction we must hold it to be sufficient.

II. Before Butler's car got far enough on the house track to clear, it was struck by the train on the river track. Had his car run a little faster or the train on the river track a little slower, the collision would not have occurred; and the real question was whether the fault was that of Butler or of the men in the management of the train that was set upon the river track. The jury have found in substance that those in the management of the train were in fault, and that Butler was not, and we think the evidence sufficient to justify their verdict. It tended to show that the train was kicked down upon the river track with great force before Butler's car had time to get out of the way. It is possible that Butler may have turned the brake-wheel without setting the brake, and this sooner than he should have done, but common prudence would dictate and the rules of the company required that cars should not be "cornered"; and, before a train is set upon a track, those in the management of it should use reasonable diligence to see that it will clear the car or cars on another track. Reliance is placed by the railroad company upon the fact that those in the management of the train after Butler's car had been cut off thought it had sufficient momentum to take it beyond the clearing post, and we doubt not that they were correct. But they did not give it time. It was still running when it was struck, and, perhaps, in two or three more seconds it would have been out of the way, but the other cars were hurled down upon it on the other track; and we cannot say that this was not negligence. The evidence tends to show that Butler was upon the top of

the car at or near the brake, and looking toward the east, where it was his duty to couple to others at or near the warehouse. In this position he probably did not see the clearing post, nor know the exact location of his car with reference to it; and, after the train was uncoupled from the way-car, it was not in the power of any of the crew to check it, and if Butler noticed it no signal from him would have been of any avail.

III. Many particular questions of fact were submitted to the jury on behalf of the defendant below, and complaint is made that some of the answers were indefinite, and the court refused to require the jury to reconsider them. We think, however, that the court should have refused to submit some of them in the first instance. We will quote only one question and answer, namely :

"(38) Is it not a fact that Butler, when on top of the car, could, by remaining there, have seen whether the car he was riding had passed east of the clearing post or not before it stopped? A. Depends upon circumstances."

This question is negative in form, and leading. Besides, it assumes that the car stopped before the collision ; and this is not only unsupported by the evidence, but contrary thereto. Several questions of a similar character were asked, apparently for the purpose of entrapping the jury. It is true that a party has a right to request answers to particular questions of fact pertinent to the issues, and which can be answered fairly upon the evidence, as held in *Bent v. Philbrick*, 16 Kan. 190, and other cases, and the court has no discretion to refuse to submit such questions to the jury ; but this court has often animadverted upon the abuse of this valuable right. (*City of Wyandotte v.*

*White*, 13 Kan. 191, 196 ; *Mo. Pac. Rly. Co. v. Holley*, 30 id. 465, 472 ; *A. T. & S. F. Rld Co. v. Ayers*, ante, p. 176, 42 Pac. Rep. 722, 723.) The cross-examination and badgering of a jury should not be tolerated, and the court should draw heavy black lines across all such questions.

IV. Some legitimate criticisms are made upon the instructions. The court stated to the jury that it was the duty of all employees associated in the service of the railroad company, "first, to exercise care and diligence for the safety and life of other employees ; and, second, to exercise care and diligence for the protection of the property and interest of the employer." The second clause should not have been given, for, while it may be correct as an abstract proposition, it is not applicable to this case. But we do not think that the jury could have been misled by it, and this remark is applicable to other parts of the instructions complained of.

Upon the whole, there was no material error in the case, and the judgment must be affirmed.

All the Justices concurring.