No. 21,979.

S. S. SMITH et al., Partners as SMITH BROTHERS & COOPER, *Appellees*, v. ROBERT HANSON, *Appellant*.

SYLLABUS BY THE COURT.

1. SALE—*Hay—Error in Estimates—Action to Recover Overpayments— Trial—No Reversible Error in Record.* It is held that no reversible error was committed (*a*) in the admission of evidence, (*b*) in the giving or refusing of instructions, (*c*) in the refusal to submit a special question, or (*d*) in the refusal to set aside a special finding, or the general verdict.

2. SAME—*Recovery of Overpayments—Interest Allowed.* The fact that a defendant has at all times denied liability on a debt the amount of which is a matter of computation, and has resisted to the utmost the efforts of the creditor to obtain judgment thereon, affords no ground for exempting him from the payment of interest, even in the absence of an affirmative finding of bad faith on his part. This rule is applied in an action to recover an overpayment where a quantity of hay was purchased under an agreement that its weight was to be determined in a specified way, and before that was done the buyer made full payment, the amount being based on an estimate which proved excessive.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed January 10, 1920. Affirmed.

*Park B. Pulsifer, Charles L. Hunt,* and *Clyde L. Short,* all of Concordia, for the appellant.

*F. W. Sturges, F. W. Sturges, jr.,* both of Concordia, and *S. N. Hawkes,* of Stockton, for the appellees.

The opinion of the court was delivered by

MASON, J.: On September 12, 1910, Smith Brothers & Cooper bought of Robert Hanson a quantity of alfalfa hay in the stack, at the agreed price of $8 a ton. The contract, which was in

writing, provided that the buyers should have the right to require the total weight of the hay to be ascertained by measuring all the stacks, weighing not more that four of them, and computing the total weight by applying the rule as to the number of cubic feet in a ton so arrived at. The hay was measured on September 26, 1910, the result showing 381,100 cubic feet. On the assumption that 400 cubic feet of the hay weighed a ton, and that the total weight was 952¾ tons, the buyers within a few days paid the seller $6,622, being the balance due on that basis, $1,000 having been paid at the time the contract was entered into. Afterwards the buyers exercised their option to require a weighing of selected stacks, and two stacks were weighed. They assert that by the standard as so established the weight of all the hay was but 599 tons, or 353¼ tons less than they had paid for. They therefore brought action against the seller for the amount of their alleged overpayment—$2,830. The defendant contended that the weighing of the two stacks had been made too late to be controlling, and also that the stacks that were weighed were not the ones described by the plaintiffs, but two others of a smaller size.

On a first trial the plaintiffs recovered a judgment for one-half the amount claimed, which was reversed on appeal on the ground that it was the result of a compromise verdict. (*Smith v. Hanson,* 93 Kan. 284, 144 Pac. 226.) On a second trial the plaintiffs were given judgment for the full amount, but this also was set aside on appeal by reason of the rejection of certain evidence. (*Smith Bros. v. Hanson,* 101 Kan. 237, 165 Pac. 852.) A third trial likewise resulted in a judgment for the plaintiffs, which is now appealed from. In the opinion on the second appeal it was said that "in view of the matters already settled or rendered unimportant by the litigation, the evidence upon another trial could well be narrowed so as to consume much less time than heretofore." (p. 241.) To a request in behalf of the plaintiffs for a more definite statement, the court made this response:

"As it has already been established that the plaintiffs are entitled to recover the price paid for any number of tons, for any of the alfalfa in excess of the number actually received by them; hence, upon another trial the evidence should be confined to the identity of the stacks weighed,

including the correctness of the 400-cubic-feet theory, in order thus to determine the number of tons actually received."

1. (*a*) The defendant complains that, notwithstanding these expressions by this court, much evidence was introduced not relating to the issues indicated, and that other issues were included in the trial. Whether or not that was the case, the judgment now attacked must be permitted to stand unless it is the result of eroneous rulings, in relation to the admission of evidence or otherwise, operating to the substantial prejudice of the defendant.

The contract contained a provision for the use by the plaintiffs of feed lots on the defendant's ranch, where the hay stood, until May, 1911, and for his furnishing some supplies in connection therewith. Complaint is made of the admission of evidence in behalf of the plaintiffs tending to show a failure on the part of the defendant to meet his obligations in this regard. The avowed purpose of the evidence was to explain the delay in selecting and weighing the test stacks, to meet an allegation of the answer that it had been agreed that the weighing should be done, if at all, prior to the time it actually took place, so that the right to correct the estimate in that manner had been lost by lapse of time. The defendant asserts that the admission of the evidence cannot be justified on this theory, because the issue as to whether the weighing had been done in time had been taken out of the case by this court. If it is true (as we understand the defendant to claim) that by virtue of the language of the court above quoted it had been finally determined that the selecting and weighing of the two stacks had taken place in due time, the defendant was not prejudiced by the trial court requiring the plaintiffs to prove the fact over again. Moreover, the defendant asked an instruction on that issue. In any event, we do not regard the evidence as prejudicial. A portion of it, relating to the furnishing of corn by the defendant, was by an instruction expressly limited in its application to the matter of the plaintiffs' reasons for paying the full price before the two stacks had been selected and weighed.

The petition alleged that the defendant had warranted and represented to the plaintiffs that in the manner in which the hay had been measured 400 cubic feet would weigh a ton,

knowing this to be false; and that the plaintiffs had acted in reliance thereon. In the opinion on the second appeal it was said:

"If 400 cubic feet in fact make a ton, any fraudulent intent on the part of the defendant would effect nothing even if proved to have existed; if not, any guaranty to that effect would have been equally potent whether made fraudulently or honestly. Hence in reality the question of fraud is in no effective sense in the case at all." (p. 239.)

. And the second paragraph of the syllabus reads:

"Under the circumstances of this case the issue of fraud is practically negligible—the vital question being the amount of hay actually purchased." (*Smith Bros. v. Hanson*, 101 Kan. 237, 165 Pac. 852.)

In the trial now under review, evidence was given in behalf of the plaintiffs of the making of such warranty and representation and of their reliance thereon. The defendant urges that error was thereby committed, and the issue of fraud injected into the case. The evidence seems to have been pertinent as tending to account for the course pursued by the plaintiffs, especially with reference to the time of selecting and weighing the two stacks and to the payment of the full amount of the purchase price before that had been done. The question of fraud was not submitted as a distinct issue—that is, no recovery was authorized on the basis of damages for the perpetration of a fraud. The charge to the jury included a reference to the manner in which fraud might be proved, but instructions on the subject (portions of which were in substance given) were asked by the defendant, who appears in this way to have recognized the matter as being incidentally involved.

Complaint is made of the admission of evidence of conversations between the parties (a part of which had taken place before the contract was signed) in which the defendant had objected to weighing the hay because of its being at the time too dry. The jury were instructed that no oral agreement as to when the hay should be weighed, made before the written contract, could be considered. With this restriction, the evidence, which obviously was offered as bearing upon the question whether the hay was weighed in due time, and which seems pertinent to that issue, was at all events nonprejudicial.

The plaintiffs introduced evidence that prior to the weigh-

ing of the two selected stacks an attempt was made to weigh another stack, which failed because of the loss of the slips showing the weights of loads taken from it; and that in the opinion of the witness the hay was not holding out. This is objected to as not bearing upon the issues to be tried. The accuracy of the 400-cubic-foot rule was held on the second appeal to be a secondary issue, bearing upon the question whether the stacks weighed were those designated by the plaintiffs. The evidence referred to is not very persuasive, but we regard it as relevant to that issue.

The plaintiffs were permitted to testify that they fed all the hay purchased of the defendant, and 100 tons more, to 6,000 lambs, and did not feed over 200 pounds per head, the obvious inference being that there was not over 500 tons of the defendant's hay. This testimony is objected to as an attempt to substitute a different method of ascertaining the quantity of hay for that based on the weight of the two selected stacks. We discover nothing to indicate that such was its purpose, and the amount of the verdict shows that the jury did not accept such a substitution. It tended in some degree to discredit the theory that 400 cubic feet of the hay weighed a ton, and the presumption is that the jury gave it no more effect than it was entitled to.

Other items of evidence objected to are: That the hay was of inferior quality, being coarse and therefore lighter than finer hay; that the method of stacking employed made a given bulk weigh less than where the usual practice was followed; that hay sold by the defendant to another buyer did not weigh a ton to 400 cubic feet; and that a plat introduced in evidence showed the size at the time of the third trial of a hog lot on which one of the stacks was said to have stood. The objections appear to us to lie rather to the weight than the admissibility of the evidence, but in any event we find in it no sufficient ground for reversing the judgment.

(b) The defendant complains of the refusal to give a number of requested instructions. Many of them were to the effect that certain evidence should not be considered, and the questions raised in that connection are substantially the same as those already discussed. Such of the requested instructions as might properly have been given we regard either as sub-

stantially covered by the general charge, or of such character that the failure to give them, in view of the verdict, was not prejudicial. The defendant asked an instruction that no oral agreement as to the time the hay was to be measured, made before the execution of the written contract, could be considered. This was given, with this addition, which is complained of: "unless such parol or verbal agreement was made in connection with said written agreement." The defendant had pleaded that at the time of the execution of the written contract and "in connection therewith," it was orally agreed between the parties that if the hay were to be weighed it should be done prior to October 1, 1910. He can hardly have been seriously hurt by the adoption of the language of his own answer. The writing made no provision as to the time when the weighing was to be done. Evidence of a contemporaneous agreement on the same subject, consistent with that embodied in writing, is not necessarily incompetent. (17 Cyc. 638; 10 R. C. L. 1019, 3 Jones on Evidence, § 439.) In view of the manner in which the issue arose, we think it clear that no error was committed in this regard.

With respect to the criticisms of the instructions that were given, we think it enough to say that they sufficiently presented to the jury the vital question in the case—whether the stacks that were weighed were in fact the ones the plaintiffs assert them to have been. The fact that the verdict was for the exact amount called for by that hypothesis shows clearly that the jury found for the plaintiff on this issue; and this is conclusively shown also by the special finding hereinafter referred to. There is no reasonable probability that the instructions on incidental and secondary matters could have improperly affected their conclusion in this regard. On the issue as to whether the two stacks were selected and weighed in due time, an instruction was given on which the defendant places an interpretation which makes it too favorable to him. That, obviously, is not a ground on which he can successfully attack the judgment.

(c) The court refused to submit to the jury a special question asked by the defendant: "Were the stacks of hay fairly measured on September 26, 1910, to the satisfaction of both parties?" The defendant asserts that the question should

have been submitted because the plaintiffs had challenged the accuracy of the measurement. The plaintiff's case was based on the results of the measurement as indicating the number of cubic feet of space occupied by the hay, the dispute being as to its density—the volume as so arrived at that would weigh a ton. An answer either way to the question which the defendant asked to be submitted to the jury would not have affected the verdict.

(d) A question as to how many cubic feet of the hay were required to make a ton was answered by the jury "636 plus." The defendant asserts that this should have been set aside as contrary to the evidence because of the testimony of a number of witnesses that 343 cubic feet of well-settled alfalfa would equal a ton. The jury rightly interpreted the question as applicable to the particular hay in controversy, and obviously accepted the results of the measurement and the weight of the two selected stacks as fairly indicating the density of the rest.

It is contended that it is a physical impossibility for the two stacks that were weighed to have been located as claimed by the plaintiffs. Even if, as asserted by the defendant, there are inconsistencies in the testimony of the plaintiffs' witnesses, the resolution of them and the determination of the true location of the stacks was a question for the jury and trial court, and we see no occasion to interfere with the conclusion reached by them.

2. A final contention is that no interest should have been allowed prior to the verdict. It is established by the judgment that the defendant has had the use of $2,380 of the plaintiffs' money since 1910, and there is no hardship in requiring him to pay for it, whether such payment be regarded as statutory interest or as damages for the breach of his contract, measured by the legal rate of interest. The statute requires the payment of interest for any money after it becomes due, and even for money due on settlement of account from the day of liquidating it and ascertaining the balance. (Gen. Stat. 1915, § 5481.) The return of the overpayment was due as soon as the weight of the selected stacks had been ascertained—it then became a mere matter of computation. The amount was entirely definite under the facts as they have now been determined to exist. If the money was obtained by the defendant through his inten-

tional misrepresentation, it bore interest at once (*Ellsworth v. Trinkle,* 96 Kan. 666, 156 Pac. 543) ; if through mutual mistake, then from the ascertainment of the truth. (16 A. & E. Encycl. of L. 1011.) The circumstance that the defendant disputed the facts, and upon that basis denied all liability, does not exempt him from the payment of interest. It is said that—

"It has been held that where the amount of the demand is disputed on reasonable grounds and in good faith, or the right to recover is in good faith denied, interest will not be allowed on the demand prior to its liquidation by verdict or otherwise." (22 Cyc. 1515.)

The note to the text quoted cites almost as many cases to the contrary as in its support. Several of those cited as supporting it deal with unliquidated claims—uncertain in amount—and turn upon that fact. (See, in this connection, *Lower v. Shorthill,* 103 Kan. 904, 176 Pac. 647.) One case subsequent to the note goes the full length of holding that no interest can be allowed where the right of recovery is denied in good faith, and the taking of three appeals is held to be sufficient evidence of the good faith. (*Baker County v. Huntington,* 48 Ore. 593, 603.) This criterion would save the present defendant from paying interest, but we cannot accept it. We do not concur in the view that the denial of liability, however vigorously made, renders a contract debtor immune from the payment of interest, even in the absence of an affirmative finding of bad faith. The question of good faith becomes a test in some situations, as where an account is to be settled or cross denials are to be adjusted. (Gen. Stat. 1915, § 5481; *Trust Co. v. Robinson,* 89 Kan. 842, 132 Pac. 979.) But when the question is simply whether at a given time a debt for a fixed amount was owing, and this is decided in the affirmative, the obligation to pay interest follows as a matter of course.

The judgment is affirmed.