No. 23,859.

THE MID-CONTINENT TIRE MANUFACTURING COMPANY, *Appellee,* v. THE MOTOR EQUIPMENT COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. SALE—*Auto Tire Tubes—Action for Price Thereof—Evidence As to Items of Credit Claimed.* In an action to recover for the sale of automobile tire tubes, the cross-petition set up divers items for which credit was claimed. As to one, of $411.85, for tubes returned by the defendant's customers on account of light weight, certain items of credit contained in letters of the defendant to its customers were incompetent and properly rejected.

2. SAME. As to such item of $411.85 there was sufficient competent evidence introduced to take it to the jury, and it was error to exclude it from their consideration.

3. SAME—*Negative and Leading Interrogatories.* Rule followed and *held,* improper to submit to a jury negative and leading interrogations.

4. SAME—*Improper Claim for Damages.* Under the evidence the withdrawal from the jury of a claim of credit for damages for failure to stamp the inner tubes sold the defendant, held proper.

5. SAME—*Claim for Loss of Profits Speculative and Uncertain.* A claim for loss of profits examined and held to have been speculative and uncertain and therefore properly withdrawn from the jury.

6. SAME—*Question of Trade Custom Immaterial.* The parties contracted by verbal negotiation confirmed by various letters, which letters set forth the terms of the contract as each party understood them. *Held,* that the question of trade custom was immaterial and this was properly withheld from the jury.

7. SAME—*Item of Credit Improperly Withheld from Jury.* An item of $180.95 of credit claimed by the defendant on account of a five per cent discount

on tire tubes sold in May and remitted for on June 10 thereafter, held to have been proper for consideration and its exclusion erroneous.

8. SAME—*No Conflict Between Evidence and Verdict.* The asserted irreconcilable conflict between the evidence and the verdict held to be without substantial merit.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed July 8, 1922. Modified.

*J. Graham Campbell, Ray Campbell,* and *T. A. Noftzger,* all of Wichita, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for $8,322.10 for inner tubes furnished the defendant in May and June, 1919, claiming that the price was 35 per cent less than the price quoted in the United States Tire Company's list in effect on that date, with an additional 5 per cent discount if monthly bills were paid by the 10th of the month following the date of delivery.

The defendant admitted receiving the tubes, but contended that the contract was at 35 per cent less than the quoted price of the company in effect when any order was given, less the additional 5 per cent discount already indicated.

By way of cross-petition it was claimed that under the contract the plaintiff was to furnish a heavier tube like a sample submitted and to stamp on each tube the name "Silverside" and also the name "The Motor Equipment Company"; that it was agreed that the contract of purchase and the business dealings between the parties should in all other respects be governed by the usual customs of the trade pertaining to a decline in price; also, that it was agreed that in case of a decline in price of inner tubes as shown by the United States Rubber Company's price list the plaintiff would protect the defendant against any such decline on tubes purchased under the contract and remaining on hands and in the possession of the defendant at the time of such decline—

"And also on any stock of inner tubes purchased by the defendant from the plaintiff under said contract and sold by the defendant to its retail customers and remaining on hand and in the possession of any such retail customers at the time of such decline, it being understood by plaintiff that the defendant obligated itself to protect its customers in like manner against any decline in

price on any stock of inner tubes purchased of the defendant and remaining on hand in the possession of its customers at the time of any such decline in price; . . ."

That during the calendar year of 1919, it was the usual custom of manufacturers and wholesale and jobbing dealers of inner tubes to protect their customers against any decline in price of inner tubes remaining on hand and in the possession of the purchaser at the time of such decline; that under the contract the plaintiff delivered to the defendant during the months of March, April, May and June, 1919, quantities of inner tubes, and during such time and subsequently, the defendant made payments and received credit as shown by an itemized account attached, marked exhibit "A"; that the tubes delivered to the defendant after May 12, and during the remainder of May and during the month of June, 1919, were invoiced from the price list existing prior to May 12, while under the terms of the contract they should have been invoiced under the list existing in May subsequent to the 12th, and in June, the decline of 15 per cent having gone into effect May 12. An item of $190.69, appearing on exhibit "A," was alleged to be for an overcharge of 5 cents per tube on all tubes after May 12. An item of $355.95 was alleged to be 15 per cent discount on tubes purchased after May 12, and items of $411.85 and $125.92 were for similar discounts on account of tubes sold to customers and held in stock by the customers on May 12. It was further alleged that on account of the plaintiff's refusal to comply with its contract after June, the defendant was obliged to go on the open market and buy tubes, by which it lost $980.60. Items of $73.65 and $510.50 on exhibit "A" were alleged to cover defective merchandise, on account of which it was averred that the plaintiff owed the defendant $5,331.71. Further, that the defendant suffered damages in the sum of $10,000 on account of lightweight tubes it was compelled to use to supply the demands of its trade. Lastly, it was alleged that the plaintiff failed to comply with its contract and place on the tubes the name "The Motor Equipment Company," and the defendant lost thereby by way of advertisement $2,000. Judgment was prayed against the plaintiff for $17,331.71, with six per cent interest thereon from December 31, 1919, and the costs of this action.

The jury returned a verdict for the plaintiff for $7,002.34, and made the following answers to special questions:

"Q. 1. Is it not a fact that the plaintiff would have continued to furnish the defendant its requirements for tubes for the balance of the year 1919 at 35 per cent off of the United States Net Dealers List in effect in February, 1919, and an additional 5 per cent off if paid on or before the 10th of the following month? A. Yes.

"Q. 2. Is it not a fact that the plaintiff would have furnished the defendant's requirements of tubes for the year 1919, if the defendant had paid therefor the contract price as contended for by the plaintiff? A. Yes.

"Q. 3. Is it not a fact that the plaintiff, on June 11th, 1919, delivered tubes to the defendant on orders of the defendant? A. Yes.

"Q. 4. Is it not a fact that the plaintiff delivered tubes to the defendant after the defendant had refused to pay for the same at the contract price as contended for by the plaintiff? A. Yes."

This negative form of question has twice been outlawed by this court. (*A. T. & S. F. Rld Co. v. Butler*, 56 Kan. 433, 43 Pac. 767; *McClintock v. Pyle*, 91 Kan. 393, 137 Pac. 788.)

"Q. 5. If you allow the defendant any damages on account of the tubes that it bought from the Mansfield Tire & Rubber Company, then state how much you allow the defendant by reason thereof. A. None.

"Q. 6. If you find for the plaintiff, upon which cause of action do you so find? A. First cause of action."

The defendant appeals and complains of various rulings of the court touching the exclusion of evidence, the giving and refusing of instructions, and denying a new trial, special complaint being made of the exclusion of evidence in support of the $10,000 damage claim for failure to furnish tubes of the weight contracted for, and in support of defendant's claim for $980.60 for loss of profits on special orders. It is also urged that the verdict returned is not in accord with the evidence under any theory whatever.

Touching the item of $411.85 on account of decline in price it was testified that a great many customers returned the goods that were shipped to them, and when asked for what reason, an objection was made and sustained; and when asked what customers said as to why they returned them, a similar ruling was made. The defendant then offered to prove that customers stated that their reason for returning them was they were light weight, which was objected to and the objection sustained. A paper, exhibit 19, being a statement of credit issued to the customers covering the decline in price, was shown. When it was offered in evidence, the witness on the stand said that he could not say it was correct in detail; that the items contained

therein were made out by one of the employees; that the data was gathered from letters received from customers, and an objection to its introduction was sustained. Further offers were made and rejected. It appears from the counter-abstract that this exhibit 19 was an original letter sent to the plaintiff company; that no letter was returned, to the knowledge of the witness. It is stated to have been a list of thirty-two customers and credits issued to each for fifteen per cent discount—$411.85. A letter from the defendant to the plaintiff, dated July 7, 1919, inclosing copies of credit memos issued to the defendant's customers on account of decline in price totaling $125.92 was offered in evidence. Exhibits 41, 42, 43 and 44, debit memos sent plaintiff by the defendant on account of defective tubes returned by customers amounting to $496.92, were received in evidence. Exhibits 47 to 57, being copies of credits sent by defendant to customers representing fifteen per cent decline, were rejected. The defendant then offered to show that these exhibits, representing credits actually given to the customers, totaled $125.92, which offer was refused. Another list of these credits, exhibit 20, appears in the counter-abstract. June 19, 1919, the plaintiff wrote the defendant, saying:

"We attach debit memo which you sent recently representing rebate on tubes in stock May 14th. As we have not agreed to protect any of our jobbers on price decline on Special brand tubes, no exception had been made. . . . If you will go over our correspondence . . . you will find that nowhere did we agree to sell you tubes and cover a price reduction . . . We are unable to make any concessions such as your deductions call for."

Items of credit contained in letters or statements sent to the defendant's customers would not of themselves be competent evidence against the plaintiff, and an examination of the record on this point indicates that no material error was committed in respect thereto.

By the fourth paragraph of the sixth instruction, the claim for damages on account of price decline was taken from the jury. This is complained of as erroneous in view of the testimony touching a reduction for decline. The plaintiff's sales manager testified that he was especially instructed by the general manager; that he approached the defendant's credit man on contracts for tubes and went into detail with him.

"And next came the price protection. I told him that that was usual and we would protect him within sixty days. That was what we were doing with all our accounts. He asked me about protection and I told him we would protect him for sixty days against price fluctuation."

He testified that later he heard the general manager talking over the telephone with the sales agent: "I heard a quotation reiterated, thirty-five off of United States dealers net list and five for cash," that thereafter he perfected the deal and when a slight decline came he told his general manager: "Sam, I believe we are stuck." The sales manager swore positively to such an agreement and also stated that May 12 or 13, he heard a conversation between the defendant's tire buyer and the plaintiff's business manager in which the former told the latter, he would "check up on the stock on hand, and the amount that was in the hands of the customers as reported by customers and send it to them with the debit," to which the response was that "it would be taken care of." In view of all this correspondence and conversation, the debit memos sent to the plaintiff were proper. It was error to take from the jury the question of price decline.

As to the claim of $10,000 damages on account of failure to furnish tubes of the agreed weight, the defendant argues that after the diminished weight was observed the plaintiff's general manager agreed to go back to the heavier weight; that objections were sustained to testimony as to why customers returned the light tubes and as to the consequent damage. It appears that in May the plaintiff advised the defendant that no more heavy tubes would be made. Plaintiff's counsel call attention to the fact that in response to their claim it was pleaded that the defendant unconditionally accepted the lighter weight tubes and did not attempt to rescind on account of them. It appears that the defendant sold practically all the tubes furnished, though it also appears that many of the lighter ones were returned to the defendant. Attempts to get a witness to state why these were returned resulted in objections being sustained as hearsay. The defendant's credit man was asked to state how damage resulted from the light weight but was not permitted to answer, but we do not know what his answer would have been and hence cannot say that the ruling was erroneous. Finding no proper evidence of damage on account of weight we affirm the action of the trial court in taking this matter from the jury.

It is claimed that failure to stamp the tubes with the name "The Motor Equipment Company" was a breach of the contract, and that the court committed error in withdrawing this matter from the jury. It was contended that because the defendant had accepted and retained tubes without this stamp it could not be heard to com-

plain; also, that the defendant abandoned this claim during the trial. Attention is called to a colloquy between the court and one of defendant's counsel during which the court asked what was the measure of damages, to which it was replied, "loss in advertising," and counsel said witnesses would endeavor to give it a real value.

"Of course, that is a thing also that cannot be—Your Honor, cannot absolutely say that because they did not have their name on one tire, that they lost a dime or a nickel by that, but they can—men who know about that business can testify that failure to do this on a dozen tires or on a thousand tires, or on ten thousand tires, or whatever it was—they would probably sustain a damage of an average of a penny a tube or a nickel a tube or whatever they might.

"The Court: All right, but you say that the Motor Equipment Company was never on any of them?

"Mr. Campbell: Yes, sir.

"The Court: I think you have certainly waived it then, by taking them.

"Mr. Campbell: We had a contract for this year, 1919.

"The Court: I know, but you can't say, we will go on and take these until we get to owing a lot of money, and then we will hold that money, on account of the various breaches of the contract. You can't do that. There isn't any such thing as excusing damages."

It was finally announced that no ruling would be made at that time, and it seems that no subsequent ruling was made, but it also appears that no competent evidence was offered on this item and it is somewhat forcibly argued that the stamp of the name on the inside of a rubber tube would not afford much advertising after the outside tube had enclosed it. Under the condition shown by the record, we think there was no error in taking this item from the jury.

The court also withdrew the matter of loss of profits by reason of inability of the defendant to fill its orders. In its cross-petition the defendant set up a claim for $980.60 on this account alleging that it was unable to purchase its full requirements from other sources than the plaintiff. It was testified that the defendant made arrangements to buy of another tire company and efforts were made to buy of still another, and that in July, 1919, and the remainder of that year, private-brand tubes were hard to obtain and that it was impossible to get all it required, which was in the neighborhood of twenty-five to thirty thousand. The defendant offered to show that certain orders had to be refused on account of inability to fill them and that a profit of $980.60 was thereby lost. This was objected to and the objection sustained. A list of customers from

whom these orders were received was attached to the cross-petition, an aggregate of about 966 orders coming from two hundred customers. It is argued that this claim was for anticipated profits, and remote. It will be recalled the jury found that the plaintiff would have furnished the defendant's requirement of tubes if the latter would have paid the contract price and that they refused to allow any damages on account of tubes bought from an outside company. There was testimony to the effect that there were tubes on the market which could have been stamped with very little trouble and expense. The acting general manager of the plaintiff testified that when the weight of the tubes was changed the plaintiff had about twenty thousand on hand ready to make up for anyone who wanted them. Under all the testimony touching this matter we find no material error in respect thereto, the claimed profits, even if proved, being speculative and uncertain. (*Stewart v. Power,* 12 Kan. 596; *Railway Co. v. Thomas,* 70 Kan. 409, 78 Pac. 861; *Gas Co. v. Bailey,* 77 Kan. 296, 94 Pac. 258; *Artwein v. Link,* 108 Kan. 393, 195 Pac. 877.) Had the tubes been bought to fill existing contracts, another rule might apply.

Complaint is made that the question of custom of the trade was not allowed to go to the jury, but was expressly withdrawn. It is contended that the custom as to protection against decline in price was properly shown by the defendant. But evidence was offered to prove an express contract, and around this matter a good deal of the controversy centered. It is also suggested by the defendant that under the terms of the contract providing for protection against decline what that meant could only be determined by the custom or practice in the tube trade. Much testimony was offered as to the meaning of "60-days protection." Several witnesses did testify that the expression means that if the dealer has bought tubes at the price offered by manufacturers and there is a reduction in the list from which he has bought the merchandise on hand, on his stock unsold, bought sixty days prior to the reduction, he is credited or credit is given for whatever difference there is between the price paid and the amount of the decline, and one witness testified that it means that jobbers and retailers are to be protected in case of decline. In the correspondence between the parties the defendant's letter to the plaintiff of February 24, 1919, said:

"This will confirm conversation with you this morning and agreement . . . to furnish . . . requirements for automobile inner tubes for the

Tire Co. v. Equipment Co.

year 1919, at 35% discount off of the United States Tire Co. net dealers list, in effect at the time that specifications for tubes are given; 5% additional discount for cash on the 10th of the month following delivery."

The reply said:

"We confirm your understanding of 35% trade and 5% for cash . . ."

To this it was responded:

"No doubt but your intentions were to say, the current price list. In other words, if this list changes tomorrow, any specifications given after the change, the discount will be from the new list, and not from the present list."

Also:

"Evidently this is an error as his letter read 'from the current list' and no doubt that is the way you would want it, the list in effect at the time of delivery of order."

From the plaintiff:

"In case of an increase and there are goods due you, but undelivered, your order would not be effective but would be billed at the old list *or the one effective when the order was taken."*

Replying to this, the defendant wrote:

"We believe that you are rather confused in your wording of this letter. It is our understanding that the discount will apply from the list in effect at the time which specifications are given from time to time. Kindly confirm this."

The plaintiff's reply said:

"The tubes are sold to you on an extremely short margin and we could not afford to sell them under the quotation we gave *and in case of an increase we would have to go by same* on material on which delivery dates had not been given."

May 23, the defendant wrote:

"You sold . . . on basis of a certain sample at 35% off of the United States Tire Co.'s price list at the time specifications for an order were given . . . I do not know what you mean by old prices. There is only one price at which we purchased the tubes from you and that was 35% off of the United States Tire Co.'s Net Dealers list price at the time specifications for an order were given to you, less 5% discount. . . . "

June 27, the defendant wrote:

"Our contract with you is that we are to buy these tubes at 35% off the current U. S. dealers net list in force at the time specifications are given. . . . We must know by July 1st, as to whether or not you intend to carry out your contract. . . ."

To this, the reply said:

"We agreed to deliver to you your 1919 requirements of Special Brand tubes at the (present) price, not the current price as you seem to think. . . If

you want to buy your tubes from us . . . you will have to pay us the present prices of tubes which is the same as it was when you placed your first order. . . . "

So far as the record shows this seems to have ended the correspondence on this subject which shows that the parties were not contracting with reference to a custom but were trying to contract for a specific discount in case of a decline in price. Hence, there was no error in excluding or withdrawing the matter of custom.

Complaint is made. that the jury were instructed that if they found the contract allowed five per cent discount for cash they should allow it only on tubes delivered from May 1 to May 11, inclusive. The defendant urges that the May invoice amounted to $3,809.35, and on June 10 it sent a check to the plaintiff for $2,670.41, the difference covering divers discounts including the one now under consideration—of $180.95, and that no objection was made to this item in the reply received from the plaintiff, the only objection being in relation to other matters; that "it kept the check all right but returned the debit memos, 'representing rebate on tubes in stock May 12th.'" Counsel say:

"If plaintiff accepted the check of June 10th sent in settlement of the May account, made no question about the cash discount, and only kicked on the rebates because it claimed the contract was different from what the jury found it to be, it should be required to stand by its attitude then taken."

The plaintiff replies that five per cent discount was to be allowed only in case payment was made before the 10th of the month following the delivery of the tubes. It says:

"Under this arrangement, the purchase price of the goods invoiced and delivered to appellant was due when the same were delivered. The trial court took this view. The payment on or before the 10th of the month, related only to the discount."

It is argued that the undisputed evidence showed that the plaintiff was not paid for the May invoice, and therefore, the defendant was not entitled to the five per cent discount for the month of June, and the court could do nothing but take this item from the jury. The letter of May 23 contained this: ". . . less 5% discount if payment is made on or before the 10th of the month following the delivery of the tubes, . . ." To this letter we find no reply in the record, and, hence, it would seem that on this one point the parties agreed. If, therefore, for tubes sent in May payment was made June 10 the defendant was entitled to

Tire Co. v. Equipment Co.

the discount. It is suggested that the correspondence shows that the account was still open, certain claims of credit being unsettled on June 10. We think, however, that the contract was for five per cent off if paid by the 10th of the following month and that the June 10 remittance was intended by the defendant and accepted by the plaintiff as a payment for the May tubes so far as this discount was concerned—certain other claims of credit not being then disposed of—and hence, the item of $180.95 should have been allowed to go to the jury.

Finally, it is insisted that the verdict for $7,002.34 can by no stretch of the imagination be made consistent with the evidence, and divers figures and mathematics are presented to sustain this contention. The plaintiff, however, appears to find reasoning on this side of algebra and geometry to show the consistency between the evidence and the verdict but suggests that if we should find the trial court erred in one or more items, the judgment should stand as to the remainder. We have given this perplexing problem in figures as much consideration as we deem it entitled to and are not moved thereby to depart from the result reached by the triers of fact save as already indicated.

Finding no material error except as to the two items of $411.85 and $180.95, the judgment is affirmed except as to those, and the cause is remanded with direction that unless the parties get together on such items a new trial as to them be granted.

---

OPINION DENYING A REHEARING.

(Filed August 11, 1922.)

The defendant has moved for a rehearing generally. The plaintiff waives the items just referred to and consents to a modification of judgment accordingly. After consideration of the motion and waiver, the judgment is affirmed except as to the items of $411.85 and $180.95 and is modified so as to exclude them, and a rehearing is denied.