No. 27,577.
No. 27,840.

THE FARMERS STATE BANK OF CUNNINGHAM et al., *Appellees*, v. E. C. CROW and THE GLOBE INDEMNITY COMPANY OF NEW YORK, *Appellants*.

(267 Pac. 1100.)

Opinion filed June 9, 1928.

*A. L. Berger,* of Kansas City, and *Lester Luther,* of Cimarron, for the appellants.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action is by the Farmers State Bank of Cunningham, the present receiver of it, and the state bank commissioner of Kansas against the former receiver of the bank and the Globe Indemnity Company of New York, surety on his bond as receiver, for the loss sustained by the plaintiffs by reason of the breach thereof by the receiver and his preconceived design, willful negligence and fraudulent conduct in handling and disposing of the property of the bank, to the great financial detriment and loss to the plaintiffs and the depositors and creditors of the bank. Issues were framed and the case tried to a jury, which returned a verdict against the defendants for $10,000, the full amount of the bond, and answered special questions. Judgment was rendered for $10,000 and interest against defendants, who bring the case here on appeal.

The amended petition recites the failure of the bank, the appointment of E. C. Crow as receiver, his giving the bond sued upon herein, his entering upon the duties of receiver, his organization of another bank and housing and maintaining it in the same office he used as receiver, and his conceiving the plan and purpose to not press the collection of the notes of the defunct bank and later selling them in order to close the receivership and to purchase them himself at a profit. It is alleged at great length that he carried out this plan, telling parties offering to pay that there was no hurry,

neglecting to notify parties of their mature obligations and failing to get security where obtainable; later, through the bank commissioner, predecessor of the plaintiff, making application to the court to sell the bank assets, the face value of which aggregated nearly $255,000; securing with the order of sale the appointment of temporary receivers so that he might be a purchaser at the sale; purchasing nearly all the assets, alleged to be worth about $50,000, for less than $6,500; then, after confirmation, proceeding promptly to make collections and obtain security, thus making for himself large and handsome profits, to the loss and damage of the plaintiffs of more than $50,000; the amended petition setting out details as to many particular instances, and alleging that the plaintiffs had no knowledge or notice of any of such designs or fraudulent purposes on his part until after the sale and confirmation.

The appellants, before answering, moved the court to strike out numerous portions of the amended petition and to require plaintiffs to separately state and number the various causes of action. The court overruled these motions. We think it properly did so, especially the motion to require the several causes of action to be separately stated and numbered. This is a suit upon a bond, which ordinarily consists of only one cause of action. The motion to strike out certain paragraphs or parts thereof could very properly have been sustained, especially where the substance of an exhibit attached was stated in the language of the pleader. Other allegations that possibly were immaterial or which pleaded details could also have been properly stricken out, but the failure to sustain the motion and order them stricken out is not error. Ordinarily, no one but the plaintiff can be harmed by stating things twice or pleading details. Defendants demurred to the amended petition on the ground that it failed to state facts sufficient to constitute a cause of action. Prior to the filing of the demurrer, however, they moved to strike the amended petition from the files, and after the demurrer objected to the introduction of any evidence under it, all for the same reason.

We will consider them all together, since they all go to the sufficiency of the petition. Appellants argue that since the bank and the bank commissioner were interested in the receivership case they should have protected their rights and the rights of those whom they represented in that action by objecting to the conduct of the receiver of which they now as plaintiffs complain; that it would be

most unconscionable to allow them to maintain this action after permitting the assets to be sold without objection. Whatever might be said of such proposition generally, the objection is fully answered in this case by the allegation that plaintiffs had no knowledge or notice of such scheme and fraud until long after the sale.

It is further argued that this action is in effect one to set aside the order of sale, the confirmation, and the judicial proceedings in the receivership case. Numerous authorities are cited holding that such cannot be done by a collateral attack. We thoroughly agree with appellants as to the conclusion, but cannot accept the premises. This is a suit on a bond. As far as the record reveals, this is the first time any court's attention has been called to this bond and the misconduct of the receiver furnishing the bond.

It is insisted that since the bond runs to the state of Kansas the attorney-general is the only proper party who could maintain this action, and further that the plaintiffs have no legal capacity to sue.

"When an officer, executor or administrator within this state by misconduct or neglect of duty forfeits his bond or renders his sureties liable, any person injured thereby, or who is by law entitled to the benefit of the security, may bring an action thereon in his own name against the officer, executor or administrator and his sureties to recover the amount to which he may be entitled by reason of the delinquency. . . ." (R. S. 60-424.)

" . . . Provided, however, That whenever the bank commissioner shall have paid any dividend to the depositors of any failed bank out of the bank depositors' guaranty fund, then all claims and rights of action of such depositors so paid shall revert to the bank commissioner for the benefit of said bank depositors' guaranty fund, until said fund shall have been fully reimbursed for payments made on account of such failed bank, with interest thereon at three per cent per annum." (R. S. 9-204.)

"The defendant has a right to insist that an action against him shall be brought by the real party in interest, as the statute provides, but the purpose of the statute has been attained if the defendant is not shut out from defenses and counterclaims and will be fully protected by the judgment from any further liability on the same cause." (*Rullman v. Rullman,* 81 Kan. 521, syl. ¶ 3, 106 Pac. 52.)

We think the amended petition states facts sufficient to constitute a cause of action and that at least the bank commissioner is a proper party plaintiff and has legal capacity to sue on the bond.

Appellants particularly urge there is no allegation of depreciation of value of securities during receivership and that property must have brought its full value at the sale. This is met by reference to

allegations of neglect in obtaining securities and failing to take mortgaged property; also by the specific instances where debtors offered more than was later received at the sale.

Before commencing the trial the appellants moved for a change of venue, or at least a change of trial judge, because the presiding judge was a material and necessary witness for the defendants in connection with the alleged fraud and misrepresentations before the court in obtaining the order of sale. In support of defendants' motion, evidence of a local attorney was introduced showing what took place and what was said in that connection. It was then stated by attorney for plaintiffs:

"I will consent that all of the testimony of C. C. Calkin may be read to the jury in the trial of this case as the facts in the case, subject to the plaintiffs' right to object as to the incompetency, irrelevancy, and immateriality of such testimony."

Attorney for plaintiffs then asked the court the privilege of striking out, and did strike out, the allegations in the petition as to fraud and misrepresentation in connection with obtaining the order of sale and confirmation of sale. The court then very properly overruled the application for change of venue, as no issue on that subject remained and no witnesses would be necessary or material.

"Therefore we think that where a judge is a material and necessary witness in a case, he is 'disqualified to sit.' If the district court had overruled the application to change the place of trial upon the affidavit presented, we would unhesitatingly pronounce the ruling eminently correct, because it seems to us that the true rule in such case is, that such facts and circumstances must be proved by affidavits, or other extrinsic evidence, as clearly show that the judge is a material and necessary witness; and unless this clearly appears, a reviewing court will sustain an overruling of the application." (*Gray v. Crockett*, 35 Kan. 66, 71, 10 Pac. 452.)

It is strenuously urged that the court erred in admitting improper evidence and in refusing to admit proper evidence and allow cross-examination along certain lines. It is quite probable in a long, closely tried case like this that mistakes of this kind were made. Some such were pointed out, but none of them appear to be of such a character as to prejudice the rights of the defendants or justify a reversal. (*Meyer-Bridges Co. v. Warehouse Co.*, 94 Kan. 288, 146 Pac. 361; *Spencer v. Casualty and Surety Co.*, 116 Kan. 491, 227 Pac. 357.)

Appellants insist that the court erred in refusing to give the jury

a peremptory instruction in favor of them, as requested, and in refusing to give the other instructions requested by them, and that it also erred in giving the instructions it did give, particularly 33, 34, 35 and 50, which are as follows:

"33. Ordinarily a receiver is precluded from buying from his estate property in his hands as such receiver.

"34. In this case, however, it appears that special receivers were appointed by the state bank commissioner and approved by the district court to conduct the sale of the remaining assets of said bank for the purpose of enabling E. C. Crow, as receiver, to bid upon and purchase certain of said properties.

"35. In this connection you are instructed that the fact that special receivers were appointed to conduct the sale, and such sale was by them conducted, and such sale was confirmed, did not relieve the said E. C. Crow from his duty to exercise the utmost good faith in his dealing with said insolvent bank. It was still his duty to deal fairly and aboveboard with all the properties of his estate and prospective purchasers thereof, and to fairly and honestly present and impart all information and facts tending to show the true value and condition of the assets to be sold, and not withhold any information acquired by him as such receiver tending to show the true value and condition of such assets. The appointment of such special receivers did not give the said Crow all the rights of a stranger to said estate, nor give him the right to deprecate the assets to be sold, nor to chill the bidding for same.

"50. You are instructed that if you find and believe from the evidence that there was collusion or an understanding between the said E. C. Crow, receiver of said bank, and C. J. Peterson, state bank commissioner, and that said Peterson and the said Crow both profited by such collusion or understanding at the expense of the creditors, stockholders and depositors of said bank, then I say to you that the orders and advice or instructions given by said bank commissioner to said receiver respecting the method of handling said properties would be no excuse for the misconduct of said Crow, if any, concerning the matters of such orders, advices or instructions in which the said receiver and the said bank commissioner may have both profited."

Appellants point out particular features of the case wherein they claim the evidence in support of necessary allegations is entirely wanting, and therefore the peremptory instruction they requested should have been given. We shall consider this question further in connection with the answers of the jury to the special questions submitted. At this time we will say that there is, we think, at least some evidence on all the essential points necessary for a recovery, and sufficient evidence thereon to submit the matter to the jury. As to the failure to give the instructions requested by the defendants, we observe, as usual in such requests, that the court in this case has in his own language embodied in his instructions the same principles of

law as contained in some of those requested; and, as to those not given in substance or otherwise, we see no error in declining to give them.

Appellants complain seriously of the court emphasizing the desire of Crow to bid at the sale and the filing of the application for such privilege, and also the explanation given, to the effect that such privilege did not give him all the rights of a stranger. Is this not the law? He was the receiver all the time except at the sale and in all things except those in connection with the sale. He was actively such up to the time of the sale, and resumed the duties immediately thereafter. An administrator who steps aside while his own claim against the estate is being considered owes to the estate all the duties which his official position imposes except the one from which he has been temporarily excused.

Instruction 50 is criticised partly because there is no allegation in the petition charging the former bank commissioner with any impropriety in connection with this case. In the progress of the trial the defendant Crow apparently attempted to justify himself by showing he was following the instructions of his superior officer. The subsequent cross-examination of Crow revealed some very intimate financial connections between the two officers and the respective financial institutions they represented. The changed features of the case were brought about by the evidence of the defense. It is not right nor fair to litigants to quit with the showing that defendant was following the advice of another, without inquiry as to collusion, if any, between them and the interest and motive of the adviser. We think the court met this new situation by stating the law fairly in instruction 50.

"In an action on the bond of an agent or employee given to secure the payment to the principal of moneys handled by him, it is no defense that . . . the money was derived from a business transaction, unauthorized, or prohibited by the corporation's charter, or that the cashier of the corporation consented to the defalcation or overdrafts, and the directors were negligent." (9 C. J. 85.)

Appellants allege that the trial court erred in not sustaining their motion to set aside the answers to certain of the special questions submitted, especially the third, fourth, fifth, sixth, seventh, eighth, and thirtieth, for the reason that they are not supported by the evidence and because they are leading and negative questions, which have been regularly criticized by the courts, as in *A. T. & S. F. Rld.*

*Co. v. Butler,* 56 Kan. 433, 43 Pac. 767; *McClintock v. Pyle,* 91 Kan. 393, 394, 137 Pac. 788; *Tire Co. v. Equipment Co.,* 111 Kan. 719, 722, 208 Pac. 659. These questions and answers are as follows:

"3. Do you find that during the time that E. C. Crow was acting as receiver of the Farmers State Bank of Cunningham, Kansas, that he willfully, purposely, deliberately, and fraudulently conceived a plan and formed an intent to cheat, wrong and defraud the stockholders, creditors and depositors of the Farmers State Bank of Cunningham, Kansas? A. Yes.

"4. If you answer the above question in the affirmative, then state whether or not the said E. C. Crow, while acting as receiver of the Farmers State Bank of Cunningham, Kansas, willfully, purposely, and fraudulently carried out his plan and intent to the extent that the creditors, stockholders and depositors of said bank were defrauded by his acts. A. He did.

"5. Do you find that the said E. C. Crow, while receiver of the Farmers State Bank of Cunningham, Kansas, well and faithfully discharged all the duties of receiver of said bank according to law? A. No.

"6. If you answer the next above question in the negative, state how much more, if any, you find would have been realized to said receivership had said E. C. Crow well and faithfully discharged all the duties of his office according to law. A. $20,650.

"7. What sum, if any, over and above the sum of $6,440 do you find that the said E. C. Crow, receiver, could have collected during the ordinary course of the receivership upon the notes listed as classes A, B and C, of the motion to confirm sale, had the said E. C. Crow, receiver, well and faithfully discharged the duties of this office according to law? A. $14,210.

"8. If you find that the said E. C. Crow, receiver, received or followed any instructions from C. J. Peterson, state bank commissioner, relative to his (Crow's) note pressing or to delaying the collection of certain assets, state whether or not E. C. Crow followed such instructions in good faith. A. Crow followed Peterson's instructions, but we do not believe that Crow or Peterson were either in good faith.

"30. If you find that the plaintiffs suffered loss and damage by reason of the fraudulent acts, statements, and conduct, state the specific items of damage and the amount thereof that you find that the plaintiff sustained with reference to each specific note or item of personal property as appears from the evidence in the case, as follows, to wit:

"(A) On the W. A. and Inez Lash note of $1,807.83? A. $750.

"(B) On the Harry Renner notes of $1,000 and $2,514.74 respectively? A. $1,500.

"(C) On the G. C. Haden notes of $100 and $469.87 respectively? · A. $400.

"(D) On the M. L. Walker notes for $1,311.12 and $2,400.75 respectively? A. $2,500.

"(E) On the notes listed under schedules A, B and C in the report of sale of November 24, 1924, and marked 'Plaintiffs' Exhibit 3'? A. $20,000."

There is no doubt that at least one or more of these questions are

subject to the criticism of being leading and negative, and should have been submitted to the jury in a different form or not at all. The three cases cited above severely criticize questions in this form, and the latest case refers to such questions as being "outlawed" in Kansas, but none of the cases hold that the failure of the court to exclude them is reversible error. None of the cases cited was reversed. Appellants particularly urge the setting aside of the answer to question 8 for the same reasons assigned as objections to instruction 50.

Error is alleged in the failure of the court to sustain defendants' motion for judgment in their favor on the answers to the special questions, notwithstanding the general verdict. In this connection our attention is directed to the answers, which show Crow was appointed receiver because the bank was insolvent; that the officers knew it was insolvent; that Crow did not prevent the officers from knowing the true condition of the bank; that he got an order to sell before he did anything toward the sale of the assets, and that he followed the order of the court; that he did not prevent anyone from bidding at the sale; that the sale was made by competitive bidding to the highest bidder; that there was no objection made at the sale and no prevention of such on his part; and that full report was made to the court; also, particularly to the answer to question 26, which is as follows and should be considered in connection with its companion question, 27:

"26. Did E. C. Crow, as receiver, in any manner fail to discharge all the duties of said receiver according to the orders of the court and the directions of the bank commissioner? A. No.

"27. If you answer the above question in the negative, then state what orders of the court or duties as receiver he failed to carry out. A. He failed to carry out his duties as receiver in that he did not collect as much of the assets of the bank as he could have and in not keeping his securities up."

We think these favorable answers of proper discharge of certain official duties are not sufficient in themselves to justify the segregation of them from the answers to other questions showing neglect, failure, and misconduct in an official capacity as a basis for a judgment notwithstanding the general verdict.

Before the case was submitted to the jury the court dismissed the case as to the Farmers State Bank of Cunningham and Charles W. Johnson, as receiver, and submitted it, as stated in the instruc-

tions, with Roy L. Bone, state bank commissioner, as the sole and only plaintiff. A cross appeal by the bank and Johnson submits this as error, but we think it can be fully answered and the decision of the trial court sustained by reference to the statute, R. S. 9-204, quoted in the early part of this opinion, to the effect that when the bank commissioner shall have paid any dividends to the depositors, as he did in this case, then all claims and rights of action of such depositors shall revert to the bank commissioner.

We think there was no error in overruling the motion for a new trial, that there was sufficient evidence to support the general verdict, and that the answers to the special questions are not inconsistent with the general verdict.

The court had, under the undisputed facts in this case, a perfect right to add interest at the rate of six per cent per annum to the general verdict from March 20, 1925, the day on which the defendant Crow ceased to act as receiver, as admitted in the answers of the defendants.

"When in such case it clearly appears from the findings of the jury that no interest has been included in their verdict, and it also clearly appears from such findings, from the admission of the party to be charged, or other incontrovertible evidence, from what date interest should be allowed, the court may compute the interest and include it in the judgment." (*Smith v. Railway Co.*, 90 Kan. 757, syl. ¶ 4, 136 Pac. 253.)

"Ordinarily, where a party is entitled to interest and the jury have neglected to add it, and it can be ascertained and supplied by mathematical calculation, it is not error for the court to add it." (*Fall v. Tucker*, 113 Kan. 713, syl. ¶ 4, 216 Pac. 283. See, also, *Berry v. Dewey*, 102 Kan. 392, 170 Pac. 1000; *Smith Bros. v. Hanson*, 106 Kan. 32, 187 Pac. 262; *Manross v. Oil Co.*, 107 Kan. 71, 190 Pac. 619.)

The judgment is affirmed.