# CHARLESTON.

HAYES PICKLESIMER, *Petitioner, v.* HON. P. D. MORRIS, *Judge, etc., et al., Respondents.*

(No. 5674)

H. A. ABBOTT, *Petitioner, v.* HON. P. D. MORRIS, *Judge, etc., et al., Respondents.*

(No. 5675)

Submitted February 23, 1926.   Decided March 2, 1926.

1. BANKS AND BANKING—*Statute Giving Power to Commissioner of Banking, on Insolvency of Bank, to Appoint Receiver, With Consent of Governor, to Take Charge of Bank's Affairs, Collect Assets, Including Double Liability Against Stockholders, Convert Assets Into Money and Pay it Out to Creditors and Stockholders, Held Constitutional (Code, c. 54, § 81a [7]).*

Section 81a (7), Chap. 54, Code 1923, which gives power to the commissioner of banking, upon ascertaining that a bank

under his supervision and control is insolvent, to appoint a receiver, with the consent of the governor, who shall take charge of the affairs of the bank, collect the assets, including double liability against the stockholders, convert the assets into money and pay out the same to the creditors and stockholders, all under the supervision of the commissioner of banking, is constitutional and valid.   (p. 132.)

(Banks and Banking, 7 C. J. § 487.)

2. SAME—*Procedure Set Out in Banking Laws for Visitation, Inquisition, Examination, and Control of Banking Institutions and for Liquidation and Winding Up of Affairs of Insolvent Banking Institution by Commissioner of Banking, is Exclusive; Prosecution of Suit by Creditor or Stockholder to Liquidate or Wind Up Affairs of Bank, Where Commissioner of Banking and Receiver Appointed by Him Have Taken Charge and Are Performing Their Duty, Will Be Prohibited (Const. art. 11, § 6; Code, c. 53, § 57, chapter 110, § 1, chapter 54, § 81a, [7]).*

The procedure set out in the banking laws for visitation, inquisition, examination and control of banking institutions and for the complete liquidation and winding up of the affairs of an insolvent banking institution, is exclusive, and the prosecution of a suit by a creditor or stockholder for the same purpose, where the commissioner of banking and the receiver appointed by him have taken charge and are faithfully and properly performing the statutory duty imposed in that regard, will be prohibited.   (p. 132.)

(Banks and Banking, 7 C. J. §472 [Anno].)

3. SAME—*Circuit Court Has No Jurisdiction to Entertain General Creditor's Suit, by Creditor or Stockholder of Insolvent Bank in Possession of Commissioner of Banking and His Receiver, for Liquidation, In Absence of Charge of Fraud or Other Improper Conduct of Such Officers (Code, c. 54, § 81a [7]).*

A circuit court has no jurisdiction to entertain a general creditor's suit by a creditor or stockholder of an insolvent bank which has been taken over for liquidation by the commissioner of banking and his receiver, in the absence of charges of fraud or other improper conduct on the part of the commissioner and receiver in the performance of the statutory duties imposed upon them whereby the complainant's rights are prejudiced in the process of liquidation.   (p. 133.)

(Banks and Banking, 7 C. J. § 473 [Anno].)

4.  SAME—*Receiver of Insolvent Banking Institution, Appointed
    by Commissioner of Banking,. is Not Subject to Control of
    Courts in Process of Liquidation of Insolvent. Bank, Unless
    He Fails or Refuses to Act or Acts to Prejudice of Another's
    Rights (Code, c. 54 § 81a [7]).*

> The receiver of an insolvent banking institution appointed
> by the commissioner of banking, with the consent of the gov-
> ernor, is a statutory receiver and is not subject to the con-
> trol of the courts in the process of liquidation of the insolvent
> bank unless he fails or refuses to act, or acts to the prejudice
> of another's rights in the discharge of his statutory duties.
> (p. 136.)

> (Banks and Banking, 7 C. J. § 487.)

> (NOTE:  Parenthetical references by Editors, C.  J.—Cyc. Not
> part of syllabi.)

Original proceeding by H. A. Abbott, Commissioner of
Banking,, and Hayes Picklesimer, receiver of the Bank of Ben-
wood, for a writ of prohibition, to be directed to Hon. P. D.
Morris, Judge of the Circuit Court of Marshall County, and
another.

*Writ awarded.*

H. A. Abbott, by *Wright Hugus,* his Attorney; Hayes
Picklesimer, by *Schmidt, Hugus & Laas,* his Attorneys.

*McCamic & Clarke, Jay T. McCamic, Martin Brown,* and
*D. B. Evans,* for respondents.


LIVELY, JUDGE:

By these writs H. A. Abbott, Commissioner of Banking,
and Hayes Picklesimer, receiver of the Bank of Benwood, and
appointed as such by said Commissioner of Banking, ask that
Honorable P. D. Morris, Judge of the Circuit Court of Mar-
shall County, and Jacob Milbaugh who is a creditor of said
bank and who sues in behalf of all other creditors of said bank
similarly situated, be prohibited from further proceeding in
a suit in chancery instituted by Milbaugh in said court.

It appears from the pleadings that the Bank of Benwood
is a West Virginia corporation, and on June 9, 1925, Abbott,
the Commissioner of Banking, declared it to be insolvent and
appointed. Picklesimer as receiver therefor, by and with the
consent of the Governor, and that the receiver qualified as

such by giving a large bond, and took charge of the bank and began to wind up its affairs as directed by the banking laws; that Milbaugh instituted suit in chancery returnable to December Rules, 1925, in behalf of himself and all other creditors of the bank (he being a depositor of about $2,500.) against Abbott, commissioner, Picklesimer, receiver, the officers, directors, stockholders (as far as he knew them) and various persons thought to be debtors of the bank, praying for an account of the assets and liabilities of the bank; that the stockholders be ascertained and their liability for double the amount of the stock held by them, the indebtedness of the officers and directors to the bank; that such indebtedness be asserted, as well as the double liability of the stockholders; that the commissioner of banking and a former commissioner be made to pay damages for not properly examining the bank and sooner ascertaining its insolvent condition; that the debts against the bank be ascertained in the order of their priority, and paid out of the assets when collected under direction of the court, and for general relief. The bank, as such, does not seem to have been made a party. No relief is prayed for against the receiver.

The bill filed is a general creditor's bill and is for the purpose of marshalling assets and converting them into money, ascertainment of the indebtedness in the order of dignity and priority; in short, for winding up the affairs of the insolvent bank in the interest of the creditors and stockholders. Abbott, commissioner, and Picklesimer, receiver, demurred and answered. Picklesimer offered a plea in abatement to the jurisdiction of the court. The demurrers were overruled, and the plea was rejected. However, the demurrer was sustained as to Abbott, commissioner, and Jackson, former commissioner, and the bill dismissed as to them. The court assumed jurisdiction and referred the cause to a master commissioner to make a comprehensive report, required the receiver to bring his books and doings before the commissioner, and, in effect, stayed his hand in further collecting or distributing the assets. Suits which the receiver had instituted against the officers and directors for negligent discharge of their duties were consolidated with Milbaugh's suit. At this stage of the case,

plaintiffs obtained this rule in prohibition, on the ground that the court below had no jurisdiction to entertain the bill.

The only question we have before us is, whether the circuit court has jurisdiction of a general creditor's bill to wind-up the affairs of an insolvent bank which has been closed and its affairs taken charge of and being wound up under the commissioner of banking; or having jurisdiction, has exceeded its legitimate powers. Prohibition lies as a matter of right where there is lack of jurisdiction to perform any judicial act. Code, Chap. 110, Sec. 1. To sustain jurisdiction in the lower court counsel attack that part of the banking act which gives authority to and directs the commissioner of banking to take charge of an insolvent bank by appointment of a receiver, by and with the consent of the governor, and to administer the affairs and liquidate the bank for the benefit of all persons concerned, as unconstitutional. It is argued that the commissioner is not a court, and cannot appoint a receiver to the exclusion of a court in the appointment of its own receiver; that a court has that inherent power, and it cannot be legislated into discord. Courts are never quick to nullify an act of the law-making power, a co-ordinate branch of the government, unless there is a plain and positive conflict in the act with some part of the Constitution. All doubts are solved in favor of the constitutionality of the banking act. The Constitution says that banks may be created by the legislature by a general banking law. Art. 11, Sec. 6. The power granted is very broad and comprehensive. The only restriction is that the stockholders shall not be exempt from double liability on the stock held by them for purposes of paying the liabilities of the bank. Corporations created by a state may be subjected by its laws to supervision, visitation, regulation and control, not only in the life of the corporation and conduct of their affairs, but also in the method by which they may be wound-up and liquidated. The power which gives the life, has the power to extinguish it and prescribe the method and by whom it shall be done. For dissolution of an ordinary corporation the method is prescribed by a suit in equity at the instance of not less than one-fifth in interest of the stockholders. Chap. 53, Sec. 57, Code. Many decisions uphold

the constitutionality of acts for winding-up the affairs of insolvent banks by a state officer or department as a valid exercise of the police power. The business of banking is so intimately interwoven with the business of the State, that public welfare demands that it should be supervised, visited, examined, controlled and liquidated, if need be, by experts. The exercise of such power by the Legislature is dictated and warranted by sound public policy. *Koch* v. *Missouri-Lincoln Trust Co.*, 181 S. W. (Mo.) 44; *State* v. *Scranton Title Guaranty &c. Co.*, 152 Pac. (Idaho) 189; *McDavid* v. *Bank of Bay Minette*, 69 So. (Ala.) 452; *Noble State Bank* v. *Haskell*, 219 U. S. 104, Anno. Cas. 1912A 487; *Jeffries* v. *Bacastown*, 90 Kan. 495, 135 Pac. 582. In the last cited case the statute authorizing the bank commissioner to appoint a receiver for an insolvent bank was held not to be unconstitutional on the ground urged that such appointment could only be made by a court of equity, and that the inherent power of a court of equity to appoint a receiver could not be interferred with by legislative enactment. Sec. 81a (7) Chap. 54, Code, which gives the commissioner of banking power to take charge of a banking institution found to be insolvent by him, appoint a receiver with the consent of the governor, and wind-up its affairs in the manner therein prescribed, is not unconstitutional. It is a valid exercise of the State's police power, and is authorized by the Constitution which says that the legislature may enact a general banking law.

The statute being constitutional, it only remains to determine whether under the statute the jurisdiction of the commissioner of banking to wind-up the affairs of such bank is exclusive. What was the intent of the legislature in that regard? Did it mean to allow any creditor, stockholder, officer or agent of the bank to institute and prosecute suits in the courts for the same purpose when the commissioner has taken charge and is bringing about the same result to be obtained by such suit? Upon examination of the act we find that for insolvency, or failure of the bank to make reports or upon refusal to comply with other statutory provisions of regulation and control, the commissioner may take charge of the bank, and appoint a receiver, with the consent of the governor, who,

after giving bond, shall take full charge of all the affairs of the
bank, collect the debts, sell or compound the bad debts, sell the
real estate, and enforce individual liability of the stock-
holders; pay ratable dividends of the moneys in his hands on
all claims proven to his satisfaction or adjudicated by a court,
and if any funds be left after discharging the liabilities, he
shall pay them to the stockholders. A circuit court may not
appoint a receiver unless the commissioner has failed or re-
fused to do so. This latter provision is strongly indicative of
the legislative intent that the courts shall not interfere with
the commissioner's statutory jurisdiction so long as he faith-
fully and promptly exercises it. The method of winding-up
the affairs of the bank for the payment of debts and collection
of assets is full and complete and should be liberally con-
strued so as to effect the purposes designed. The commis-
sioner of banking is peculiarly fitted by training and experi-
ence to effectuate the remedy thus prescribed for the benefit
of all concerned. Before enactment of this law, the process
of liquidation of insolvent banks through the instrumentalities
of the courts had been extended over many years, engender-
ing public complaint and criticism. An expeditious, inex-
pensive and efficient method was needed, and the Legislature
met the need, following the footsteps of other states and the
federal government. We are of the opinion that the intent
was to make the jurisdiction of the commissioner and the
receiver appointed by him (in some decisions denominated a
"statutory receiver") exclusive and may not be defeated or
subverted by any party in interest by resort to the courts, un-
less he has refused to act or is acting in such a way as to
jeopardize the rights of the complainant. There is no claim
of that character in the bill. No complaint is made of the
receiver's discharge of his duties, except that he had been
asked to and had refused to institute *"this suit"* for the pur-
pose of winding-up the affairs by the processes of the court.
One purpose of the statute was to avoid, if possible, a pro-
ceeding of that character. If it should be held that the cir-
cuit court has concurrent jurisdiction with the commissioner
for the purpose of winding-up the bank's affairs at the suit of
a depositor or creditor, the familiar principle that the author-

ity which first takes cognizance has the exclusive right to entertain and exercise such jurisdiction, is applicable here. The commissioner had already acted and had taken full charge, and the statutory receiver had already actively begun the liquidation. It was stated in argument that he had instituted about fifty-two suits for the purpose of bringing in assets some of which might otherwise have been jeopardized in their collection.

The exclusive jurisdiction of the commissioner has never been challenged, and the question is of first impression in this State. It strikes a blow at the efficiency of the banking act, for there would be little practical use for the commissioner to take charge and begin liquidation if an importunate or impatient creditor or party in interest could at the same time oust his control and stay his hand. *Alleman* v. *Sayre,* 79 W. Va. 763, as well as other of our cases cited by counsel for respondent, have little application here. The *Alleman* case was a suit by a creditor claiming that he had a preference in the distribution of the bank's assets, which the receiver denied. It was not a general creditor's bill to take control and administer the liquidation, but was to assert a claim against the receiver for a preference in payment.

The courts of other states have uniformly held under statutes similar to ours, some of which are not as strongly indicative of legislative intent of exclusive jurisdiction as our statute, that the jurisdiction of the commissioner is exclusive, and in many cases prohibition has been awarded against interference by the courts. *State* v. *Norman,* 206 Pac. (Okla.) 522, where prohibition was awarded to prevent the district judge from taking jurisdiction; *Lyon* v. *McKeefrey,* 96 C. C. A. Repts. 340, 348 (state may prescribe exclusive method for winding-up corporations); *Long* v. *Superior Court,* 102 Cal. 449 (prohibition issued); *Craughwell* v. *Trust Company,* 113 Me. 531; *Cartmell* v. *Com. Bank & Trust Co.,* 153 Ky. 798, where it was held that the act provided an adequate and safe method for liquidation of an insolvent bank, and a court of equity was without jurisdiction to take charge and appoint a receiver, unless the banking commissioner had failed or refused to act; *Labette County Com'rs* v. *Peterson,* 235 Pac.

(Kan.) 848, which says, "The language of the statute, 'the receiver under direction of the bank commissioner, shall take charge of such bank and its assets and wind-up its affairs and business thereof,' indicates an exclusive power in the bank commissioner, except as otherwise provided;" *Koch* v. *Missouri-Lincoln Trust Co.,* 181 S. W. (Mo.) 44.

Pertinent to the questions here involved is our case of *State ex rel Pub. Service Commission* v. *B. & O. R. R. Co.,* 76 W. Va. 399. The railroad company had instituted a suit in chancery in the Circuit Court of Kanawha County to test the constitutionality of the two-cent passenger rate law of 1907, claiming that it was confiscatory as applied to that railroad, and asked for an injunction to restrain prosecutions, pending the suit, for charging a rate in excess of the statutory rate. The public service commission, *ex mero motu*, instituted an investigation of the reasonableness and justness of the increased rates proposed to be put in effect by the railroad, and ordered the railroad company to produce its evidence of the reasonableness and justness of its proposed rates to it, the public service commission, for consideration and decision. The railroad refused to comply with the order, claiming that the public service commission had no power to make any order affecting passenger rates on railroads, and that it, the railroad company, had invoked jurisdiction of the circuit court, in which suit the commission itself was made a party defendant and in which an injunction was sought against it and other state officials from interfering with its proposed increased rates. The commission applied to this court for a mandamus to compel the railroad to recognize its jurisdiction and obey its order, and to prohibit it from increasing its passenger rates until the further order of the commission. The writ was awarded. While the Constitution provided that the legislature should from time to time pass laws establishing maximum rates to be charged by railroads in the transportation of persons and property, the court held that the act creating the public service commission and defining its powers and duties was not invalid in delegating this power to the commission, a body exercising powers of a quasi-legislative and quasi-judicial nature in respect to intra-state rates to be

charged by railroads. The exclusive jurisdiction of the commission in respect to rates and charges was upheld, and injunctive process from the courts to stay the hand of the commission in performance of its functions was denied. The legislature, within its constitutional power, had created a convenient, expeditious and inexpensive method by which the public and the public utilities could be protected in the conduct and charges of the various public serving companies which so vitally affect the public welfare, and while there was no expression in the act taking jurisdiction from the courts in passing upon the justness and reasonableness of the rates in the first instance, the intent of exclusive jurisdiction in the commission was plainly apparent, so long as the commission acted within its statutory powers. Otherwise confusion, expensive litigation and delay would have resulted. And such would be the result in the administration of the banking laws, should we hold that the hands of the commissioner can be paralyzed by interference from the court, so long as the liquidation of the bank at his hands is conducted within his statutory powers and such powers are not exercised to the prejudice of another's right.

The writ will be awarded.

*Writ awarded.*