## CHARLESTON.

CHARTER, *Banking Com'r., et al. v.* KUMP, *Judge, et al.*

(No. 6754)

Submitted March 20, 1930.  Decided April 1, 1930.

*J. M. N. Downes,* for petitioners.
*William T. George,* for respondents.

LIVELY, PRESIDENT:

Charles Tenney, a depositor in the Peoples Bank of West Virginia, at Buckhannon, in Upshur county, an insolvent bank in the hands of Receiver Tabler, appointed by the commissioner of banking on March 26, 1929, filed his bill at September rules, 1929, against the receiver, the bank, its directors and stockholders, on behalf of himself and all other depositors, praying for a discovery of the amount of the assets of the bank in the hands of the receiver; the amount of money on deposit prior to February 5, 1929, which had been returned to the depositors, to whom returned, and the amount to each; the indebtedness of the bank and to whom owing; the disposition of assets since the bank was closed by the commissioner of banking on February 5, 1929; to whom, and for what price; and the amount paid out to any depositor or creditor since February 5, 1929. Also for a disclosure of the names of the directors for six years next preceding February 5, 1929, and the dividends declared and paid by them, and to whom paid during that period; the bonds, amounts, and sureties thereon of the defaulting cashier and assistant cashier, covering that period; and the names of the stockholders and amount of stock held by each. The bill prayed for a reference to ascertain the assets, the debts and priorities, a decree of sale of the assets and disbursal of the proceeds to the creditors; ascertainment of the amounts for which the directors were liable for negligence which caused losses to the bank, and a decree against them; the date the bank became insolvent; the dividends paid to the directors; a decree against the sureties on the bonds of the cashier and assistant cashier; a decree against the stockholders for double the amount of stock held by each, if the assets failed to pay the liabilities; that the assets be

distributed by order of the court; that the receiver be enjoined from administering the affairs of the bank except as directed by the court; that he be required to account for all that went into his hands, and that the bill be treated as a general creditors suit, and for general relief. A demurrer to this bill for lack of jurisdiction to entertain it was sustained; and Tenney later filed an amended bill in which he adopts the allegations of the original bill, and asked that H. A. Abbott, commissioner of banking, be made a party, and charging upon information that he (Abbott) and Tabler, the receiver, had returned to a number of depositors in full the sums deposited by such depositors prior to February 5, 1929, "without authority of law," without naming any of such depositors or the amounts paid them and when; that the receiver and commissioner of banking had sold to one Worth Johnson the Kelley property, an asset of the bank, for $10,000, whereas the property was worth $20,000, which the receiver and commissioner well knew; that after advertising for sale the banking house, they sold the same at private sale to Traders' National Bank for $15,000 and exchange of a lot, whereas, plaintiff says on information that this property was worth $50,000; and that the receiver and commissioner had no authority to take a lot in part payment; therefore plaintiff and the other creditors were defrauded out of a large sum of money. And the amended bill says that the commissioner and receiver are mismanaging the affairs of the bank, in that they have paid out large sums of money to depositors and creditors without authority of law (without naming any of the said depositors), and in the sale and exchange of the real estate; that said receiver and commissioner are "indifferent" to the plaintiff and other depositors, and that the latter have been defrauded and will be defrauded if the sales of real estate are permitted to stand. Fraud on the part of the receiver and banking commissioner is the gravamen of the amended bill. The prayer is that the commissioner and receiver be restrained from selling the Kelley property to Worth Johnson (who is not a party defendant) at the price of $10,000, and be restrained from selling the banking house to the Peoples Bank at the price of another lot plus $15,000; and for general relief. A demurrer by nearly all of

the defendants to this amended bill was overruled, and L. R. Charter, Jr. (who succeeded Abbott as banking commissioner), and Tabler, receiver, sued out this rule in prohibition on the ground that the court had no jurisdiction to entertain this creditors' bill. The trial chancellor filed a formal return to the rule, and Tenney also made return. It appears that the receiver has collected and paid to the creditors about $272,000.

The court had no jurisdiction to entertain the bill, or the amended bill, as a creditors' suit to wind up the affairs of the insolvent bank. *Picklesimer* v. *Morris, Judge,* 101 W. Va. 127, 132 S. E. 372. It would serve no useful purpose to reiterate the reasons and principles of the Picklesimer Case.

Since the decision in the Picklesimer Case, the Legislature has strengthened the banking act, by giving to the commissioner of banking fuller powers in the winding up of an insolvent banking institution under his supervision. See Chapter 23, Acts 1929, which became effective about May 28, 1929, the provisions of which, by section 32, were made applicable to receivers of banking institutions in process of liquidation at the time the act was passed. By that act the statutory receiver acting under the commissioner of banking is directed to sue for possession of the property, sell and dispose of the same, and to collect all obligations due the banking institution. He is required to enforce by suit or suits any liability incurred by the directors and stockholders to the creditors; and without waiting to administer the assets, he may sue to collect the ''double liability'' of the several stockholders.

The statutory receiver's jurisdiction and power to collect and administer all of the assets of the bank of whatever kind and character under the orders of the commissioner of banking are exclusive, and the courts may not interfere so long as the receiver and banking commissioner are faithfully performing their statutory duties under the act. *Picklesimer* v. *Morris, supra; State ex rel. Short* v. *Norman,* 86 Okl. 36, 206 P. 522. Analysis of the bill shows that its main purpose is to make the statutory receiver the court's receiver for the purpose of taking over and winding up the bank's affairs under the court's orders. The commissioner of banking would have no control over the receiver, nor would he have any voice or

power to discharge his statutory duties in the premises, if that were permitted. The court properly sustained the demurrer to the original bill for want of jurisdiction under the averments thereof.

The legislative intent being strongly indicated, both in the old and new banking act, that the commissioner and his receiver should have exclusive power and jurisdiction to wind up insolvent banks, it should be clearly shown that those powers and that jurisdiction have been abused to the detriment of some person in interest, before control is taken from the commissioner. The amended bill seeks to make such showing. Has it done so? That is the controlling question before us. The amended bill adopts the allegations of the original. Tenney reiterates his allegations therein for a creditors' suit, and as an additional basis therefor says in a general way that the commissioner and receiver have returned to a number of depositors in full the deposits made by them prior to February 5, 1929, without authority of law. This charge gives no names, amounts, or dates. The bank was closed on February 5, 1929, because of its insolvency. Under section 81a (8), Chapter 54, Code, then in force, it would have been a misdemeanor for any person connected with the bank to accept deposits, knowing that the bank was insolvent. It would have been the duty of the receiver to return these deposits tendered when he knew the bank was insolvent. But take it for true that deposits were returned in full, it is not shown that plaintiff would be prejudiced thereby. The assets of the bank when collected may be sufficient to pay all of the depositors in full, but not likely; however, the receiver's bond guarantees immunity from loss to the creditors for wilful, careless, or fraudulent dissipation of assets by him. We think this allegation of payment in full to unnamed depositors is not sufficient to give jurisdiction to the court, by a creditors' suit, to oust the banking commissioner and his receiver of exclusive jurisdiction accorded by the statute.

Another allegation of the amended bill is that the receiver and commissioner have sold the banking house for $15,000; and a lot of land, whereas plaintiff is informed and believes,

that the bank's property so sold to Traders' National Bank is worth $50,000. It was stated in argument by counsel for both parties that this alleged trade had been rescinded in another suit for that purpose, and is now of no consequence in this proceeding.

Another allegation on information is that a sale of the Kelley property has been made to Worth Johnson for $10,000, whereas it was worth $20,000, a fact well known to the receiver and commissioner; and that the receiver and commissioner, by reason of the payment of large sums to depositors as above set out and the sale of the real estate for inadequate prices, are mismanaging the affairs of the bank, and that by reason thereof plaintiff and the other depositors have been and will be defrauded. Fraud on the part of the receiver and commissioner is the basis on which plaintiff seeks to oust their exclusive jurisdiction to wind up the affairs of the bank. A court of equity will always take jurisdiction to purge fraud. It is a well-recognized subject of equity jurisdiction. But fraud is a conclusion of law from facts pleaded. Fraud must be particularly alleged, especially when the act alleged to be fraudulent may be innocent. "In pleading a fraud, the pleader must by apt words allege in his pleading every act, fact and intent which necessarily enter into, and constitute that particular fraud; and these essentials must be alleged with such precision and certainty as to exclude every construction, except the fraudulent and wrongful purpose complained of; and if, from the face of the pleading, it is doubtful whether the allegations do in fact amount to that particular fraud or not, it is not well pleaded." *Loomis* v. *Jackson*, 6 W. Va. 613 (18th pt. syl.). The alleged fraud is not sufficiently plead to give the court jurisdiction on that ground. The exclusive power of the receiver and commissioner to wind up the bank's affairs cannot be ousted by such general charges of fraud and mismanagement.

It is argued that the bill is sufficient for the purpose, at least, of recovering from the directors the losses occasioned by their negligence and illegal acts as such, and for recovery on the bonds of the defaulting cashier and his assistant, the proceeds to go into the hands of the receiver to be paid out by him

under the court's orders. The statute expressly gives that power to the commissioner and receiver and until they refuse to do so no creditor can bring such suit. Because suits have not been instituted promptly upon the receiver's taking charge of the bank, is not good ground for independent action by a creditor. It takes time and investigation to assemble data to maintain such suits and bring them to a successful conclusion. The statute requires the receiver to take such action, and his delay alone in doing so (the ground here relied on) is not sufficient for assuming that he will neglect or refuse. Prohibition is the only adequate remedy to preserve unimpaired the exclusive jurisdiction of the statutory officers in the discharge of their lawful duties.

We hold that the lower court was without jurisdiction to entertain the general creditors' suit; and prohibition will be issued.

*Writ awarded.*