FANNIE L. TIMMONS *v.* PEOPLES TRUST COMPANY

*and*

FANNIE L. TIMMONS, *Executrix v.* PEOPLES TRUST COMPANY

(CC 492)

Submitted February 6, 1934.   Decided February 20, 1934.

*Emmert & Rice,* for plaintiff.
*J. O. Henson,* for defendant.

HATCHER, JUDGE:

These are two certified cases involving certain details in connection with the reorganization of an insolvent bank. In one of the cases plaintiff seeks in her own right to recover $4,725.00, with interest, which she placed in a savings account with the defendant bank on May 28, 1930. In the other, she seeks to recover as executrix $6,526.45 which was on deposit in a checking account in the bank to the credit of her decedent on September 10, 1930. The two actions were brought in November, 1932. The plaintiff's pleadings allege the deposits, her demands of payment and the refusals of the bank; but make no reference to the insolvency of the bank which occurred in October, 1931.

The defendant plead the general issue and filed certain special pleas in each case, to which pleas plaintiff's several demurrers were sustained and the sufficiency of the pleas certified here.

Plea No. 2 in each case says only that plaintiff should not maintain her suit because at the time of the reorganization of the defendant in October, 1931, plaintiff was informed that at least 66-2/3% of the stockholders would pay a voluntary assessment on their capital stock aggregating more than $200,000 in consideration that the depositors allow their deposits to remain "with the bank over a period of years," and that plaintiff did not "disavow the proposed reorganization agreement" but permitted it to be consummated and is now estopped, etc. It is settled that "all facts essential to be

proved to sustain a plea must be alleged in the pleading."
49 C. J., subject Pleading, sec. 220. In other words, "When
several pleas are filed each must contain a complete defense;
each is separate and distinct in itself, except when one is
connected with the other by words of reference." 16 Ency. of
Pl. and Pr. 561-2. (See generally on such a reference 49
C. J., *supra*, sec. 251; *State* v. *Vaughn*, 93 W. Va. 419, 117
S. E. 127.) Pleas No. 2 do not mention the insolvency of the
defendant, make no reference to other pleas which do mention
it, do not explain the reorganization therein referred to, do
not show that the stockholders were misled or prejudiced by
plaintiff's conduct, and are otherwise too incomplete and gen-
eral in terms to show an estoppel. Demurrers thereto were
properly sustained. *State* v. *Seabright*, 15 W. Va. 590.

Plea No. 4 in each case would deny plaintiff a cause of action
because defendant says that it was placed in "voluntary
liquidation" by the state banking department on October 16,
1931; that on November 14, 1931, it undertook to reorganize
its business and the banking department required that at least
66-2/3% of the stockholders should pay an assessment of 100%
upon their capital stock; "that at least 66-2/3% of the de-
positors other than public depositors should consent to a
freezing of their deposits over a period of years"; that the
deposits of depositors not agreeing to the plan should be
liquidated by the defendant "as the liquidating agent" and
distribution made to them "when the assets should be col-
lected"; that the conditions made by the commissioner of bank-
ing were reasonable and in the interest of the depositors; that
more than 85% of both stockholders and depositors complied
with the conditions and the bank was re-opened accordingly;
that plaintiff did not agree to the plan and defendant will
liquidate her account "as rapidly as it can"; and that "pend-
ing the collection of assets sufficient to pay said account" the
plaintiff cannot maintain this suit.

The chief contention of the plaintiff against pleas No. 4 is
that the plan of reorganization impairs the defendant's obli-
gations to her under her several contracts of deposit. Under
modern business conditions the public is so dependent on
banks that reasonable regulation of banks under the police
power is universally recognized. *Picklesimer* v. *Morris,* 101

W. Va. 127, 132, 132 S. E. 372; Michie on Banks and Banking, Vol. 1, sec. 3; Thompson on Corporations (3d Ed.), sec. 491; 22 Am. & Eng. Ency. Law, 933; 7 C. J. 480; 3 R. C. L. 379; *Schramm* v. *Bank,* (Ore.) 20 Pac. (2d) 1093; *Milner* v. *Gibson,* (Ky.) 61 S. W. (2d) 273. Code 1931, 31-8-6, places banking institutions under the supervision of the commissioner of banking, and 31-8-29 (Acts 1929, ch. 23, sec. 31) provides that an insolvent bank may reorganize ''with the consent in writing of the commissioner.'' Some states require the plan of reorganization to be approved by a certain percentage of the depositors, varying from 75% to 90%. Our statute does not prescribe the manner of reorganization, but being remedial ''must be so construed as to advance the remedy intended.'' *Becker* v. *Amos,* (Fla.) 141 So. 136, 80 A. L. R. 1480.

After the defendant became insolvent in 1931, the commissioner had exclusive authority to administer the defendant's assets. Code 1931, 31-8-32. *Picklesimer* v. *Morris, supra; Charter* v. *Kump,* 109 W. Va. 33, 152 S. E. 780. That authority included the right to ''take full charge of all the affairs of the bank, collect the debts, sell or compound the bad debts, sell the real estate, and enforce individual liability of stockholders, pay ratable dividends of the moneys in his hands on all claims proven to his satisfaction or adjudicated by a court, and if any funds be left after discharging the liabilities he shall pay them to the stockholders.'' *Picklesimer* v. *Morris, supra,* 133. Thus the commissioner became the exclusive agent of the bank, its creditors and stockholders. Because of his plenary powers we cannot treat his consent to a reorganization of the bank as a mere gesture. In order ''to advance the remedy intended'' by the reorganization, we must hold that unless arbitrary, unjust or fraudulent, such consent is binding on all the depositors as well as the bank. Any suggestion of improper conduct in this case is discountenanced by the allegation that more than 85% of the depositors accepted the reorganization plan. This view is supported by general law. Prior to the insolvency of a bank, the claim of an ordinary depositor is personal; but after insolvency, his claim becomes communal and is subject to class treatment. Except in case of legal right of preference, ''the property of a debtor bank is the common pledge of all the creditors.'' Michie, *supra,*

Vol. 3, sec. 61. Where a common fund is involved, courts will not usually permit a small minority of those interested to defeat the wishes of an overwhelming majority of their associates. *Shaw* v. *Ry. Co.,* 100 U. S. 605, 611-612; *In re Farmers Exchange Bank,* (S. D.) 225 N. W. 307, 309. Consequently we are of opinion that the plan of reorganization invaded no constitutional right of the plaintiff.

However, pleas No. 4 are subject to other objections. "Facts relied on in defense of the action must be directly and distinctly stated in the plea." Hogg's Pl. & Forms, sec. 219 (4). The plea should not leave the facts "to be deduced by argument and inference." 49 C. J., *supra,* sec. 221. The pleas No. 4 do not aver *directly and distinctly* that sufficient assets have not been collected to pay plaintiff's claims in whole or in part ratably. Even if we should concede that the allegations sufficiently allege inadequate collections, approximately a year intervened after the bank was reorganized before these actions were brought; yet the pleas contain no averment which would excuse the bank for failure to collect in the interim. Accordingly demurrers thereto were properly sustained.

Plea No. 5 was filed only in plaintiff's suit in her own right. It alleged that the defendant had made a rule with the approval of the banking commissioner, requiring six months' notice prior to the withdrawal of a savings account, that the rule is reasonable, and that plaintiff has not complied with it. This plea is bad because it does not aver (a) that the rule was in force when plaintiff's deposit was made, or (b) facts arising since the deposit which would warrant making the rule.

A plea in each case was filed on March 22, 1933, which said that on March 2, 1933, the commissioner of banking pursuant to authority vested in him by an act of the legislature passed on March 1, 1933, and with the consent of the governor, required the defendant to retain 50% of plaintiff's deposit until October 14, 1936, and the balance of the deposit until October 14, 1937, and that defendant is bound to comply with the requirement. The ruling of the commissioner set up in these pleas is not consistent with his "consent" to the reorganization of the bank as advanced in pleas No. 4. However, inconsistency between pleas is not forbidden except as to a plea

of *non est factum*. Code 1931, 56-4-39. The pleas· of March 22nd aver no facts which would support the requirement of the commissioner. The pleas should present some necessity or occasion which would justify such a drastic invasion of the plaintiff's rights. The plea is not sustained by a mere presumption of law that the commissioner properly performed his duty. Hogg, *supra,* sec. 219 (11).

The rulings of the circuit court are accordingly affirmed, and the cases remanded with leave to the defendant to plead further if it so desires.

*Affirmed.*