(No. 7345)

Submitted September 13, 1932.   Decided September 20, 1932.

*Steptoe & Johnson* and *Stanley C. Morris*, for plaintiff in error.

*James M. Mason* and *Dillon, Mahan & Holt*, for defendants in error.

Maxwell, Judge:

This is an action in debt on a special receiver's bond. The surety, United States Fidelity & Guaranty Company, a corporation, prosecutes this writ of error to a judgment against it for $1,743.30, based on verdict.

By decree of the circuit court of Kanawha County entered June 10, 1927, in the chancery cause of A. Johnson and others against Illini Coal Company, a corporation, and others, Raymond J. Mors was appointed special receiver of the

properties of the Illini Coal Company and was directed to "preserve and care for the same as he shall be from time to time directed by this court and pursuant to the laws of this state governing receiverships." By the said decree Mors as such special receiver was required to execute and file in the office of said circuit court a bond in the penalty of $10,000 "conditioned to well and truly discharge his duties as such receiver in accordance with the order of the court and to well and truly pay over and deliver, when and as directed by the decrees of this court all property, money, choses in action and other assets that shall come into his hands as such receiver." Bond in penalty, and conditioned, as required by said decree, was immediately executed by said special receiver with the United State Fidelity & Guaranty Company as surety.

On the 17th of January, 1928, the circuit court, upon petition of said special receiver, granted him leave and permission to operate mine No. 2 of said Illini Coal Company for the production of coal to fill the orders then on hand by said receiver and such other orders as he might obtain while the said decree should remain in force, but only upon condition "that all the cost and expense of starting and operating the said mine shall be paid by the plaintiffs in this suit out of their own funds, and that there shall be no liability, cost or expense incurred by the said Receiver as such or on behalf of this suit, in so starting and operating the said mine." By decree of March 17, 1928, the receiver was authorized to operate mine No. 1 of the said company, under the same limitations as are prescribed in the first decree. It is recited in each decree that the plaintiffs in said chancery suit and other directors of Illini Coal Company had raised and deposited with said special receiver a sum of money sufficient to pay the cost and expense of putting the mine in operating condition and of producing coal therefrom to fill the orders which the receiver had in hand.

In April, 1928, the bill of merchandise upon which this suit is predicated was purchased by Mors of the plaintiff for use at the mines of the Illini Coal Company. There is some controversy as to whether this purchase was made by

Mors in his capacity as special receiver or as agent of the Illini Coal Company, but the jury by its verdict having resolved this controversy in support of the proposition that he made the purchases in his capacity of special receiver, we would not be warranted in holding that finding to be incorrect. In fact, we deem it well supported in the evidence.

On behalf of the plaintiff it is urged that the special receiver, in purchasing the merchandise of plaintiff, acted within the scope of his authority under the decree of the court, although, perhaps, in excess thereof. It is argued that under the conditions of the bond the surety undertook to indemnify against loss all persons who might deal with the principal within the scope of his authority. We cannot subscribe to the proposition that the receiver acted within the scope and purview of his authority when he purchased the merchandise of the plaintiff. We are impressed that he acted in direct violation of the decree of the court, and therefore wholly without authority.

The receivership was primarily for the limited purpose of taking care of the property of the Illini Coal Company. This clearly appears from the order appointing the receiver. The surety became obligated on the bond on the basis of the limited character of the receivership. The mere custody or caretaking of property under a receivership is a far more modest and much less hazardous undertaking than the operation of coal mining plants.

Operating receiverships may involve the handling by the receiver of large amounts of money which would in no wise be involved if the receiver's only duties were to take care of the properties placed in his custody by decree of court. The possibility and even the probability of liabilities devolving upon the surety are thus far greater under an operating receivership than under a receivership which involves only the taking care of property. A bonding company is entitled to be compensated for the character of obligation which it undertakes. For the greater hazards it should be entitled to higher remuneration. Therefore, where a bonding company has become surety on the bond of a receiver clothed only with authority to take care of property, there would

be gross injustice in placing liability on such company for merchandise purchased by the special receiver under a subsequent decree of court clothing him with operating powers. Of course, the conditions of such bond might be sufficiently broad to embrace such later obligation of the receiver, but that is not this case. ''A surety is never answerable beyond the clear scope of his engagement, and a contract of suretyship is construed strictly both at law and in equity, and the liabilities of the surety cannot be extended by implication beyond the precise terms and scope of his engagement.'' 1 Clark on Receivers (2d Ed.), sec. 420. In accord: *Ayers* v. *Hite,* 97 Va. 466, 34 S. E. 44, and numerous cases there cited. Even under the rule which requires the undertakings of corporate surety companies to be construed most strongly in favor of the obligees *(Board of Com'rs.* v. *Clemens,* 85 W. Va. 11, 100 S. E. 680), there cannot be read into the bond a condition entirely foreign to the purpose for which it was given.

But this receiver, by the decrees of January 17 and March 17, 1928, was not clothed with the powers of an operating receiver, within the usual meaning of that term. The decrees were unusual. In effect, Mors was authorized by the court to proceed as agent for the plaintiffs and other directors of the Illini Coal Company to use the properties which were in the custody of Mors as receiver, and to operate the same for his principals and at their expense and risk. This was made very clear by the two decrees which authorized the operation of the coal mining plants. Persons dealing with receivers must take notice at least of their general powers and authority. 53 Corpus Juris, p. 160; 23 Ruling Case Law, p. 77; 1 Clark on Receivers (2nd Ed.), sec. 356. A clear statement of the rule appears in High on Receivers (4th Ed.), sec. 186: ''And since a receiver has no power to make contracts without the authority of the court, all persons contracting with him are chargeable with knowledge of his functions in this regard and contract at their peril.''

When Mors undertook, in his capacity of special receiver, to purchase merchandise of the plaintiff, he acted wholly beyond the authority which the court had conferred upon

him. In fact his conduct was in direct violation of a clear and exact inhibition which the court had expressly placed upon him. In so doing he was not engaged in the discharge of the duties of his trust. Although he acted under color of his office, he was wholly outside the scope of his authority. The plaintiff, having been altogether indifferent about the extent of the receiver's authority at the time it extended credit to him, cannot now be entertained in its effort to fasten liability upon the surety. We find no legal support for that position.

Special receivers, who, in the guise of their office, contract liabilities beyond the scope of their authority, are, as a general rule, liable personally for such undertakings. *Vansenden* v. *Kerr*, 89 W. Va. 62, 108 S. E. 423; *Meyer* v. *Lexow*, 37 N. Y. Supp. 67. This is the same rule which is applicable to executors, administrators and trustees. *Dunne* v. *Deery*, 40 Iowa 251. Though, in such instances, there is personal liability imposed upon the fiduciary (including special receiver), we are cited no case, nor has our search revealed one, in which the bondsman of the fiduciary was held liable on the contract of the fiduciary in excess of his authority.

"A receiver's bond covers two aspects of his duties, one the care and preservation of the property that comes into his hands, and the other the disposition or distribution thereof in accordance with the orders of the court." *Matson* v. *Surety Co.*, (Iowa) 215 N. W. 630. "The liability of a surety upon the bond of a receiver conditioned for the faithful performance of his duties is limited to cases of a violation of those duties which may properly be said to be within the scope of the order of appointment. Accordingly, where a receiver, without any authority from the court, has proceeded to borrow money to pay off a mortgage upon real estate which is in his possession as receiver and fails to account for it, the surety upon his bond is not liable for such misappropriation since the act of the receiver was entirely beyond the scope of the order of his appointment." High on Receivers (4th Ed.), sec. 133b.

Upon the conclusion of the introduction of evidence, the defendant requested an instruction from the court directing

the jury to find for the defendant. The foregoing considerations impel us to the conclusion that the court should have directed such verdict. Therefore there will be an order here reversing the judgment, setting aside the verdict, and remanding the case for further proceedings.

*Reversed and remanded.*