COMMERCIAL BANKING & TRUST COMPANY *v.* DODDRIDGE COUNTY BANK *et al.*

(No. 8224)

Submitted October 14, 1936. Decided November 24, 1936.

*A. G. Mathews, S. A. Powell* and *Reese Blizzard,* for appellant.

*Louis A. Henderson, Clyde C. Ware* and *John S. Stump, Jr.,* for appellees.

MAXWELL, JUDGE:

In this chancery cause, instituted in the circuit court of Doddridge County, Commercial Banking & Trust Company, a domestic banking institution, incorporated, of Parkersburg, is plaintiff, and the Doddridge County Bank, a domestic banking institution, incorporated, of West Union, E. A. Rinehart, receiver of said Ddddridge

County Bank, C. E. Lawhead, receiver of various insolvent state banks, and George Ward, commissioner of banking of the State of West Virginia, are defendants. As such commissioner, Ward succeeded W. C. Given who succeeded L. R. Charter, Jr.

E. A. Rinehart, receiver as aforesaid, and the Doddridge County Bank filed a joint and separate demurrer to the bill of complaint. C. E. Lawhead, receiver, and W. C. Given, commissioner, likewise demurred. By decree of August 15, 1934, the circuit court overruled the demurrer of Rinehart and the Doddridge County Bank, but sustained the demurrer of Lawhead, receiver, and dismissed the bill as to him. The demurrer of the commissioner of banking was sustained in part and overruled in part. He remains a defendant to the bill in respect of certain matters not presented on this review.

On this appeal, awarded to the plaintiff, there is brought in question the action of the trial court in sustaining Lawhead's demurrer and dismissing him from the cause. The partial sustaining of the commissioner's demurrer goes to the same point.

Summarily stated, the following are allegations of the bill pertinent to this inquiry: That in the month of October, 1931, in the city of Parkersburg, L. R. Charter, Jr., then commissioner of banking of the State of West Virginia, and who for many years prior to his appointment as such banking commissioner had been president of the Doddridge County Bank, called at the office of his long-time friend, Reese Blizzard, president of Commercial Banking & Trust Company, and inquired if the Banking & Trust Company would be interested in receiving a deposit from C. E. Lawhead, receiver; that Charter, as banking commissioner, then stated to the plaintiff's said president that Lawhead, as receiver, had a larger account in the Doddridge County Bank than the commissioner thought advisable, and that he, the commissioner, would cause to be transferred from the Doddridge County Bank to the Commercial Banking & Trust Company about $40,000.00 of the account of Lawhead receiver provided the commercial Banking &

Trust Company would make a deposit of equal amount in the Doddridge County Bank; that the amount which the receiver would thus deposit in the Commercial Banking & Trust Company would be kept there until the money which the plaintiff would deposit in the Doddridge County Bank had been repaid; that in conversation, the commissioner represented to the plaintiff's president that the Doddridge County Bank was then in good financial condition; that the plaintiff's directors approved the proposal, and a few days later, Lawhead, receiver as aforesaid, deposited to his credit with the plaintiff the sum of $39,082.88, and thereupon the plaintiff transmitted to the Doddridge County Bank for deposit a like sum; that said arrangement was entered into by the Commercial Banking & Trust Company solely for the accommodation of the Doddridge County Bank; that no part of the plaintiff's deposit in the Doddridge County Bank has been repaid; that Lawhead, receiver, has withdrawn from Commercial Banking & Trust Company a portion of the deposit he made therein, leaving a balance at the time of the institution of this suit of $28,021.63; that on January 31, 1933, the Doddridge County Bank executed to the Commercial Banking & Trust Company a bond in the same amount as the deposit which Commercial Banking & Trust Company had made in the Doddridge County Bank, which bond was conditioned to save Commercial Banking & Trust Company harmless on account of said deposit, and, with the bond, the Doddridge County Bank placed as collateral security certain notes payable to it by various persons.

Further, the bill alleges that on July 3, 1933, the Doddridge County Bank was closed by the commissioner of banking, W. C. Given, successor to Charter, and E. A. Rinehart was appointed receiver thereof; that a few weeks later, Commercial Banking & Trust Company demanded the return to it from the Doddridge County Bank of the said collateral security notes, which, after they had been delivered to the Commercial Banking & Trust Company in January, 1933, had been returned by it to the Doddridge County Bank for collection; that

Given, commissioner of banking, refused to permit the return of said notes by the receiver of the Doddridge County Bank to the Commercial Banking & Trust Company.

The portion of the prayer with which we are immediately concerned is that Lawhead, receiver, be "enjoined and restrained from withdrawing or attempting to withdraw, by check or otherwise, any part of the moneys now held by the plaintiff to the credit of said Receiver, and from attempting to collect the said moneys or any part thereof, by legal proceedings or otherwise,—until the further order of this Court (circuit court)." Other elements of the prayer are that there be full disclosure by Rinehart, receiver, of the above-mentioned notes which were posted by the Doddridge County Bank with the Commercial Banking & Trust Company as collateral security, disclosing whether any of the notes have been paid, and other matters relative thereto; that the Doddridge County Bank and Rinehart, receiver, be required to account to the plaintiff for all moneys paid and received by them and each of them as interest or discount on the collateral notes or any of them; that the last two named defendants be required to deliver to the plaintiff the said notes, or any renewals thereof that may have been executed; that if any balance remains due the Commercial Banking & Trust Company after receiving the proceeds of the notes aforesaid, it shall be decreed the right to charge such balance against the account of C. E. Lawhead, receiver.

Do the allegations of the bill present a case for equitable relief against Lawhead, receiver?

In support of the bill the plaintiff takes the position that under the broad and comprehensive powers of the commissioner of banking of the State of West Virginia, L. R. Charter, Jr., had the authority to enter into the alleged arrangement with the Commercial Banking & Trust Company; that Lawhead, receiver, acting under authority and direction of the commissioner of banking, had authority to effectuate the proposed plan; that the Commercial Banking & Trust Company having per-

formed its part of the agreement, the commissioner and the receiver cannot now repudiate their part; that the acts of the receiver are as binding upon him and upon the commissioner as would be the acts of a receiver appointed by a court of equity. The plaintiff urges that because of the serious economic and financial conditions in West Virginia and generally throughout the United States at the time of the arrangement between the commissioner of banking and the plaintiff, the commissioner's action must be most benignly considered; that, if, in his judgment, it was necessary, in succoring the Doddridge County Bank, an important financial institution whose solvency or insolvency would probably affect other financial institutions of that section of the state, to arrange for the withdrawal from said bank of a substantial amount of trust funds and to cause to be placed in lieu thereof an equal amount of the plaintiff's money, the commissioner's action must be deemed to have been taken by him in good faith and for a laudable purpose, wherefore it would be inequitable now to permit the commissioner's successor in office and Lawhead, receiver, to repudiate the said arrangement or any element thereof.

Cases relied on by the plaintiff do not present similar factual situations to the one set forth herein. Conspicuous among the cases cited are: *Charter* v. *Kump, Judge*, 109 W. Va. 33, 152 S. E. 780; *Timmons* v. *Trust Co.*, 114 W. Va. 618, 173 S. E. 79; *O'Connor* v. *Bankers Trust Co.*, 159 Misc. 920, 289 N. Y. S. 252; *Roller* v. *Murray*, 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202, Ann. Cas. 1913B, 1088; and *Farmers' State Bank* v. *Crow*, 126 Kan. 395, 267 P. 1100. None of these cases involves a situation wherein a trust fund deposit was sought to be employed directly or indirectly to bolster the weakened structure of a financial institution.

The good faith of the banks and officials concerned in the above-stated arrangement of October, 1931, is not drawn in question, except it is alleged that Charter misrepresented the financial condition of the Doddridge County Bank. This case must be decided, however, with-

out regard to the question of good faith. The basic inquiry is whether there was authority on the part of the commissioner of banking and the receiver to transfer funds to the Commercial Banking & Trust Company under conditions and stipulations as pleaded in the bill. And, incidental to the primary inquiry, there arises the query respecting the legal status of the Commercial Banking & Trust Company in undertaking to make the agreement it alleges it made in respect of trust funds in the custody of Lawhead, receiver.

However meritorious it may be, as a broad proposition, for all persons, and particularly banking officials and public officials, to lend their support to financial institutions in times of great distress and emergency, such commendable efforts must nevertheless be put forth within legal limits, although liberal construction be employed.

The contractual arrangement of October, 1931, was not in writing. A serious inquiry might arise as to the applicability of the statute of frauds, Code 55-1-1 (d) requiring that an actionable promise to answer for the debt or default of another must be in writing. The question was not raised by counsel, and, inasmuch as, for other reasons, the case must be decided adversely to the party relying on the contract, it will not be necessary to enter upon discussion of the statute-of-frauds phase of the problem.

We are of opinion that notwithstanding the stress of circumstances relied on by the plaintiff, the decision of this case must be determined through the application of thoroughly familiar, basic principles.

Funds which stood in the Doddridge County Bank to the credit of Lawhead, receiver, and which were transferred by him to the Commercial Banking & Trust Company in pursuance of the arrangement of October, 1931, were trust funds. They belonged to the depositors and other creditors of certain closed banking institutions. As to those funds, Lawhead occupied a fiduciary relationship. He held the funds in trust for the rightful owners thereof. Neither the receiver, the banking com-

missioner, nor anybody else had the right to use those funds, or any part thereof, however well-intentioned the motive, for the purpose of assisting in the stabilization of the financial structure of a bank (Doddridge County Bank), considering that the method made use of was, in effect, a posting of such funds as a guaranty of the repayment of funds of another banking institution (Commercial Banking & Trust Company). Trust funds may not be thus employed. On principle, a fiduciary having trust funds in his control has no more right to post them to protect the debt of another than he would have to pledge them to secure his own debt. That he may not use trust property for his own benefit is of the essence of the law.

The fiduciary character of receivership duties must be accorded paramount consideration. The basic purpose of a receivership is the conservation of the property of other people. This primary concept is incompatible with the idea of making use of such funds, in any manner whatever, to give assurance of credit to some third person, whether corporate or individual, and, in so doing, to hazard the very existence of the funds. Receivers of banks have only such authority as is conferred on them by statute or court decree. Funds in their hands are *in custodia legis*. *Fidelity & Guaranty Co.* v. *Trust Co.*, 95 W. Va. 458, 462, 121 S. E. 430; High on Receivers (4th Ed.), sec. 175; 1 Clark on Receivers (2d Ed.), sec. 355; 23 Ruling Case Law, p. 70. Equally well settled is the principle that he who deals with a trustee or other fiduciary must inform himself of the latter's authority. So far as trust property is concerned, persons dealing with reference thereto do so at their peril. It is their duty to ascertain whether the fiduciary has authority to do the thing contemplated. 1 Clark on Receivers, (2d Ed.), sec. 356; High on Receivers, (4th Ed.), sec. 186; State ex rel. *Fayette Grocery Co.* v. *Mors*, 112 W. Va. 544, 547, 165 S. E. 807; *Moren* v. *Ins. Co.'s Receiver*, 224 Ky. 643, 6 S. W. (2d) 1091; *Chicago Deposit Vault Co.* v. *McNulta*, 153 U. S. 554, 562, 14 S. Ct. 915, 38 L. Ed. 819. Whether a receiver's authority rests on court decree or

44

statute, the principle is the same. In either event, he who deals with a receiver must look to the background of his authority. Our statute, Code 1931, 31-8-32, with reference to bank receivers appointed by the commissioner of banking (such was the manner of appointment of Lawhead, receiver) contains no provision that would authorize such receiver to employ receivership funds in the manner contemplated by the arrangement of October, 1931.

The said arrangement having been without legal justification, it follows that the plaintiff cannot rely thereon in support of its effort to prevent Lawhead, receiver, from withdrawing from plaintiff the above-mentioned balance of funds.

From all of which we reach the conclusion that the trial chancellor committed no error in partially sustaining the commissioner of banking's demurrer and in sustaining the demurrer of Lawhead, receiver, to the bill of complaint, and in dismissing the latter from the cause.

*Affirmed.*