MATT BURGESS *et al.* v. KANAWHA BY-PRODUCT COAL COMPANY

(No. 8731)

Submitted October 18, 1938. Decided November 22, 1938.

*Payne, Minor, Ray & Davis, John V. Ray* and *B. C. Tynes,* for appellant.

*G. R. C. Wiles, J. F. Ellison, Campbell, McClintic & James, Charles C. Wise* and *Clarence W. Meadows,* Attorney General, for appellee.

Fox, Judge:

This is an appeal by the Kanawha By-Product Coal Company from a decree of the circuit court of Kanawha County entered in the chancery cause of Matt Burgess against said Company on April 27, 1937, whereby there was decreed to be paid, out of a fund then in the hands of the court, the sum of $223.45 to Matt Burgess; the aggregate sum of $2887.41 to the Burgess Grocery, which, according to the record, was owned by Matt Burgess; $272.29 to the Appalachian Electric Power Company; $48.60 to J. D. Moore; and $40.75 to the State of West Virginia. It is contended that all of these sums represent money expended by Matt Burgess as receiver for the Kanawha By-Product Coal Company in excess of the amount he was authorized to expend as such receiver, and that the decree as to said amounts was improper for that reason.

In November, 1936, Matt Burgess instituted a suit in equity in the circuit court of Kanawha County against the Kanawha By-Product Coal Company, the general purpose of which was to collect certain indebtedness claimed by plaintiff to be due from the defendant. Upon presentation of the bill in said cause on November 12, 1936, without notice to the defendant, plaintiff in the cause, Matt Burgess was appointed special receiver for the Kanawha By-Product Coal Company and thereafter qualified as such. In the decree appointing the said special receiver, he was authorized to resume and continue the business of the Coal Company, being that of mining and shipping coal, subject to the following specific limitation: "But in so doing said Special Receiver shall not create or incur any indebtedness over or in excess of the amount he may be able to obtain by the sale of coal mined and produced by him, except that said special receiver is authorized to incur an indebtedness of not to exceed $250.00 in the purchase of an electric fan motor, and in cleaning up and draining the inside of the mine located upon the defendant's leasehold and otherwise placing said mining

plant in condition to be operated, and to resume the mining and shipping of coal therefrom." The special receiver was expressly authorized to contract for the purchase of electric power, and to purchase material and supplies and employ laborers, etc., necessary for the operation of the mining plant. Preliminary, however, to such operation, the said special receiver was directed forthwith to make an inventory of the assets of the Coal Company and to make report thereof to the court, and it was stipulated that if, after inspecting said leasehold and mining plant, he should be of the opinion that the expense of placing the same in operating condition would exceed the sum of $250.00, or that the expense of operating the plant, including payment of royalty, would exceed the amount for which the coal mined could be sold, he should make report of that fact to the court, and incur no further expense without special authority therefor; and he was required to make reports at least every thirty days. Shortly after this decree was entered, operations of the mining plant began, and on December 31, 1936, a report was made by the special receiver, in which it appears that the amount expended in putting the plant in operating condition was $391.15; and it was also stated that mining operations had not continued for a sufficient time to enable the special receiver to determine whether or not the mine could be operated at a profit, but that he should be able to obtain such information by the end of the first half of January, 1937. This report was approved and confirmed and an order was entered thereon, on the day the report was filed, requiring, among other things, that the special receiver should on or before the 25th day of January, 1937, again file with the court a full and complete statement of coal mined and the cost thereof, as well as the amount received from coal sold and other pertinent matters, covering the period from the time mining operations began to the 15th of January, 1937.

The case was referred to a commissioner in chancery, who reported that, after the application of proceeds of sales of coal, there remained unpaid the several sums of

money set out above, and allowance thereof was made to the parties entitled thereto, to which exceptions were taken by the Kanawha By-Product Coal Company, and the court below having confirmed the commissioner's report as to said items and decreeing payment of said sums, this appeal is prosecuted.

Appellant contends that the special receiver, in contracting the debts on which the said decree was based, violated the express terms of the order by which he was appointed, and that he cannot be permitted to profit through his own wrong in so violating the order of the court, and must suffer the consequence of his acts in so doing.

In our opinion the amounts decreed to the Appalachian Electric Power Company, J. D. Moore and the State of West Virginia occupy a position different from that of the claims decreed to the Burgess Grocery and Matt Burgess. While the rule is that "Persons dealing with receivers must take notice at least of their general powers and authority", (*State Ex rel. Grocery Co.* v. *Mors*, 112 W. Va. 544, 165 S. E. 807) in this case the court authorized the operation of the mining plant, the contracting for electric power and other necessary work in connection with the operation of the plant. The order under which the special receiver was acting limited his right to operate, and the operation was, in a sense, an experiment for the purpose of determining whether or not the mine could be operated at a profit, and so long as the operation was permitted to be continued by the court, it can hardly be said that persons dealing with the special receiver must, during this experimental period, be held liable for a mistake of judgment on the part of the special receiver, or that of the court. We find, therefore, that the allowances to the Appalachian Electric Power Company, J. D. Moore and State of West Virginia were, under the circumstances of this case, proper, and the decree of the court in their favor is affirmed. However, this holding is not to be considered as a precedent in cases

where the duty of one dealing with a receiver to take notice of the extent of his powers is more apparent.

But we hold that the court was in error in decreeing the several sums mentioned to the Burgess Grocery and to Matt Burgess. Burgess being the owner and operator of the Burgess Grocery, the decree to the grocery and to Matt Burgess stand upon the same basis. Burgess had full notice and knowledge of his power. When he operated the mining plant, and contracted indebtedness which the proceeds from the sale of coal would not cover, he did so at his own risk. It must be held that he had knowledge of the situation from the time the operation began, and knew when the expense of operation exceeded the income derived therefrom. When this occurred, he was under duty to cease operations under two provisions of the order under which he was appointed: first, that which limited operations to those the expense of which could be met by incomes from the sale of coal, and, second, that provision which required him to cease operations when it was determined that the costs thereof would exceed the total of income. A special receiver, being the agent of the court which appoints him, may not, by his own act alone, entail upon the estate in his charge debts and obligations beyond those authorized in the order or decree by which he was appointed. *Hyre* v. *Johnson,* 107 W. Va. 524, 149 S. E. 385, 64 A. L. R. 1536; *Grocery Co.* v. *Mors, supra; In re Erie Lumber Co.,* 150 Fed. 817; *Haines* v. *Buckeye Wheel Co.,* 224 Fed. 289. It is well settled in this state that receivers who exceed their powers are personally responsible for indebtedness so contracted. *Vansenden* v. *Kerr,* 89 W. Va. 62, 108 S. E. 483; *Grocery Co.* v. *Mors, supra.* This is especially true where a special receiver contracts with himself and profits as an individual through exceeding his powers.

It is contended by counsel for Burgess that the decree complained of operated as a ratification of the acts of the special receiver in contracting this indebtedness in violation of the court's orders, and 53 C. J. 158, sec. 199 is cited in support of this contention. That authority is to

the effect that the general rule against contracts and expenditures without previous authority should not be rigidly and sternly enforced, so as to work wrong and injustice, "where the receiver has acted in good faith and under such circumstances as will enable the court to see that if previous authority had been applied for it would have been granted." Here, it is quite apparent that the expenditures were made not only without authority of the court, but against its plain direction, and that if authority for such expenditures had been asked for, the request would not have been granted. The lower court, in appointing a receiver, was apparently determined that the property should not be operated, if, by so doing, the expense thereof would exceed income. To say that after the order appointing the receiver had been violated and the mischief done in creating this large indebtedness, the court could, by mere allowance of all the amounts involved, ratify the misconduct of the special receiver, is to disregard completely the rights of original creditors and the owners of the property, whose interests were sought to be protected in the first instance by the limitation made on the special receiver's power to contract debts.

The decree of the circuit court is therefore affirmed, in so far as the allowances were made to the Appalachian Electric Power Company, J. D. Moore and the State of West Virginia, and reversed so far as it decreed any sums to the Burgess Grocery and Matt Burgess, and the cause remanded for further proceedings not inconsistent with this opinion.

*Affirmed in part; reversed in part; remanded.*